NEILSON *against* MOTT.

IN ERROR.

UPON a writ of error to the Common Pleas of *Phila-* delphia county, the case was as follows:

The action was brought upon a promissory note dated the 30th *January* 1804, by which *Neilson*, the defendant below, promised to pay to the plaintiff or his order, *one day after the conclusion of the drawing of the extra class of the Easton De-laware Bridge Lottery,* twelve hundred and fifty dollars, without defalcation, for value received. The declaration contained an averment, that " the conclusion of the drawing " of the said extra class of the Easton Delaware Bridge " Lottery did afterwards happen and take place, to wit in the " county aforesaid on the 31st day of *December*, in the year " of our Lord one thousand eight hundred and five; by rea- " son whereof and by force of the statute &c."

Upon the trial of the cause, it was proved that the note was given for five hundred lottery tickets in the abovemen- tioned lottery, which was authorized by an act of assembly of the 4th of *April* 1798. 4 *St. Laws* 278. By the 4th section of that act, the drawing was under the superintendance of five commissioners, appointed by the governor, who were sworn or affirmed diligently and faithfully to perform the duties entrusted to them, and who *certified* and testified that the drawing finished on the day laid in the declaration. The lottery contained fifty thousand tickets. In each wheel there was the same number of pieces of paper; that is, fifty thou- sand tickets or numbers in one wheel, and in the other, fifty thousand pieces of paper designated as blanks or prizes; and at the close of the drawing, the papers came out even from the two wheels. In the wheel containing the numbers of the tickets, the numbers of thirty-nine tickets were omitted, and in the same wheel there were duplicates of thirty-nine num- bers. Of the thirty-nine omitted numbers, nineteen of the tickets corresponding with them, were held at the conclusion of the lottery by the plaintiff; and he had made satisfaction to the holders of the residue, with the exception of four or

*The defendant purchased of the plaintiff five hundred lottery tickets, for which he gave his promissory note payable one day after the conclusion of the drawing of the lottery. There was an irregu-larity in the drawing, caused by inserting in one wheel thir-ty-nine numbers twice, and omit-ting thirty-nine numbers alto-gether; but none of the defen-dant's numbers were omitted, all the prizes were duly paid, and he never of-fered to return any of the tick-ets purchased by him. Held that it was not competent to the defendant to resist the payment of his note, upon the ground that the lottery was not legally drawn.*

1810.

NEILSON
v.
MOTT.

five, all of whom by public advertisement he had offered to indemnify. But none of the tickets corresponding with the omitted numbers, were among those for which the note was given by the defendant, *all the defendant's tickets having corresponding numbers in the wheel, and one of them a duplicate number; nor had the defendant ever returned or offered to return to the plaintiff, any of the tickets so sold to him.* All the prizes drawn in the lottery, were duly paid by the plaintiff. A day or two before the last day's drawing, the wheels were opened for examination by the commissioners, as was proved to be usual in the case of other lotteries, and the number of tickets in the respective wheels found to be equal; and as the commissioners discovered that there was one number omitted, and another put in twice, they altered one of the duplicates to the number omitted, under the conviction that it had been intended for that number; but they acknowledged that they had not known an instance of such an alteration in any other lottery. The plaintiff was the proprietor of the lottery by purchase from the Easton Delaware Bridge Company. He put up the tickets, and the numbers, blanks, and prizes were made out under his direction.

Upon this evidence, the defendant's counsel requested the court to charge the jury, that the matters produced and proved were sufficient upon the whole case to bar the plaintiff of his action; but the court on the contrary delivered their opinion, that they were sufficient to entitle the plaintiff to recover, and sealed a bill of exceptions.

*Condy* and *Peters* for the plaintiff in error, argued that the event upon which the note was payable, was not the termination of the drawing *de facto*, but of the regular and legal drawing of the lottery; and that such irregularities, caused by the plaintiff, had occurred in this drawing, as vitiated all the proceedings, and made them in point of law a nullity. The act which authorized the lottery contained no scheme; but it sanctioned only that scheme which should be approved by the governor; and if any other scheme was adopted, or there was a variation in any particular from the approved scheme, the drawing was illegal. Now it is manifest that the omission of thirty-nine numbers altogether, the insertion of thirty-nine duplicates, and the change of a number after the

drawing had commenced, was no part of that scheme of the lottery which was authorized by law. It was however a part of the scheme upon which the lottery was drawn, whether intended or not; and this variation must be fatal, because. it made it a new lottery. The most strict conformity to law is essential to the validity of a lottery, since all lotteries are illegal unless particularly sanctioned by the legislature. The certificate by the commissioners does not prove that the lottery was drawn; they were not competent to give such certificate; and at most it could only mean that the wheels were exhausted, and the drawing finished in point of fact. The drawing was not fair even as to the defendant; because there being two numbers in the wheel corresponding with one of his tickets, if one had drawn a blank and the other a prize, the uncertainty of his title might have prevented a recovery. Nor was he bound to return the tickets on hand. He was entitled to retain them until the lottery was fairly drawn.

*Hopkinson* and *Ingersoll* for the defendant in error, answered, that the act of assembly, having placed the drawing exclusively under the superintendance of commissioners, who were sworn to do their duty, made their certificate conclusive that the drawing was finished. But that, independent of this evidence, there was enough to shew that no such irregularity had occurred as could vitiate the drawing, or at least none of which the plaintiff in error could take advantage. To vitiate a lottery there should either be fraud, or some fundamental error that affected the whole scheme; mistakes in so extensive a lottery must inevitably occur. There is no pretence of fraud; for the plaintiff who is said to have been the author of the mistake, held nineteen of the omitted tickets himself. There was no error that deranged the whole scheme; for every ticket, except the few omitted, had identically the same chance of prize or blank, as if all had been inserted. Those only whose tickets did not participate the chance of a prize, were injured; and an indemnity has been given to most, and offered to all of them. But if there was irregularity, the plaintiff in error cannot set it up. All his tickets had the full benefit of the lottery; one had a double chance, for no person could claim the prize to either the original or duplicate number but himself. He has re-

1810.

NEILSON
*v.*
MOTT.

·tained all the tickets, or sold them and received the money. The prizes drawn to their respective numbers have been paid. He has not received the least imaginable injury from the mistake. And it is therefore monstrous that he should be permitted to affirm the drawing for all purposes beneficial to himself, and to disaffirm it for all that are beneficial to the defendant in error. As to these parties the drawing is legally concluded.

TILGHMAN C. J. This action was brought on a note by which the defendant promised to pay to the plaintiff twelve hundred and fifty dollars, one day after the conclusion of the drawing of the extra class of the Easton Delaware Bridge Lottery. This lottery was made by authority of an act of assembly passed the 4th *April* 1798. It was drawn under the superintendance of five commissioners appointed by the governor, who took an oath for the faithful performance of their duty; and those commissioners have certified that the drawing of the lottery was completed. The first question that occurs is, whether the defendant is estopped by the certificate of the commissioners from shewing that the lottery was not drawn. I do not think he is. There is nothing in the contract of the parties which refers the decision of this fact to the certificate of the commissioners. It is to be proved like all other facts, to the satisfaction of the jury. The fact is however that the lottery was drawn, although it appears that considerable irregularity took place. If this irregularity had in any manner prejudiced the chance of the tickets purchased by the defendant, (for which the note in question was given) I should be of opinion that the plaintiff could not recover. But that does not appear to have been the case. All the defendant's numbers were put into the wheel containing the numbers, and every thing was right in the wheel containing the blanks and prizes. The defendant indeed had one duplicate ticket, but in that he suffered no injury; he rather had an advantage, as it gave him a double chance for a prize. All the prizes drawn in this lottery have been paid. If the defendant had drawn the highest prize he would have been entitled to it, and no doubt he would have taken it. It is unfair that he should have enjoyed the full chances that he contracted for, and yet not be obliged to pay

for them. At the same time I think it would have been more prudent in the commissioners to have stopt the drawing, the moment they discovered the irregularity which had taken place. They had a right to do so, and to begin the business anew. But as they thought proper to complete the drawing, as the fortunate adventurers have received their money, and the only persons who were really injured, (those whose numbers were left out of the wheel) have acquiesced, I do not think it is competent to the defendant, who has suffered no injury, to withhold payment of his note on the ground that the lottery was not drawn according to law. I am of opinion that the judgment be affirmed.

YEATES J. It appears by the bill of exceptions, that the plaintiff below, having become proprietor of the extra class of the Easton Delaware Bridge Lottery, by purchase from the company, sold five hundred tickets therein to the defendant below, who gave him a note for twelve hundred and fifty dollars, payable one day after the conclusion of the drawing of that class. The single question is, whether the drawing of that class of the lottery was concluded before the commencement of the suit?

The bill of exceptions states that the number of tickets in one wheel, exactly corresponded with the number of prizes and blanks in the other wheel. But it so, happened, that in the former wheel the numbers of thirty-nine tickets were omitted, and instead thereof the numbers of thirty-nine other tickets were put in twice. Of the omitted numbers nineteen belonged to *Mott* at the conclusion of the lottery, and he had satisfied the holders of the remaining twenty, (except four or five) whom he had advertised to come in. None of the omitted numbers belonged to *Neilson;* but all the tickets sold to him for which the note was given, had their corresponding numbers in the wheel. He had never returned, nor offered to return, to *Mott*, any of the tickets which he had procured from him, and all the prizes drawn in the lottery have been duly paid by *Mott*. The commissioners who superintended the drawing, have acquitted him of every species of fraud in the whole transaction.

It has been objected that the drawing of the lottery was irregular, and that to do the adventurers justice, it ought

1810.

NEILSON
v.
MOTT.

to appear that the entire scheme of the lottery had been strictly pursued. It is admitted that there has been a mistake in having thirty-nine duplicates, instead of the thirty-nine numbers omitted. But *Neilson* was not interested in any of the omitted numbers, and has no reason to complain on that score. As to him the transaction throughout was fair. As he was the proprietor of none of the omitted numbers, it is selfevident that his chance of success was not in the least impaired by the mistake. His prospect of gain was built on the proportion of five hundred against fifty thousand when he bought his tickets, and this ratio was in nowise altered by misnumbering other thirty-nine tickets to which he had no claim. If he possessed a duplicate ticket, the chance was in his favour, for he obtained thereby a double chance of a prize for a single ticket.

The certificate of the commissioners is evidence of the conclusion of the drawing of the extra class of the lottery; but in my idea not conclusive. Proof might be given that the transaction was unfair and fraudulent. If it could be collected from the circumstances of this case, that such had been the conduct of *Mott*, or that the scheme of the lottery had not been pursued in such a manner as to give *Neilson* all the advantages of fortune which the original plan contemplated, I should have no hesitation in pronouncing that there could be no recovery on this note. It is not competent to the plaintiff in error in my idea, to sustain objections which might be made by the four or five holders of omitted tickets, who are yet unsatisfied. The fortunate adventurers it is certain, would never agree to have the lottery drawn over again, and thus exchange a certainty for an uncertainty; and as to *Neilson*, who has had every chance to which he was entitled, he can insist on no such thing. Besides, he must either affirm or disaffirm his contract *in toto*. He has neither returned nor offered to return any of the tickets purchased by him. *All the prizes* in the lottery have been duly paid; meaning, as I presume the bill of exceptions does, that *Neilson* has got credit for the prizes drawn by the fortunate tickets, held by him when the lottery was drawn; and that those to whom he has sold tickets which have drawn prizes, have received their money. Under such circumstances it is idle to suppose that the lottery can be drawn over again. Shall then the plaintiff in error hold the prizes, and the prices for which he

has sold a certain portion of his tickets to others, (who have also received their prizes) and yet make no compensation to the proprietor of the lottery for his tickets? I should think it against all reason and good conscience. The terms of the extra class of this lottery *as to him*, I think, have been fully complied with, and conclude upon the whole matter that the judgment of the Court of Common Pleas should be affirmed.

1810.

NEILSON
*v.*
MOTT.

BRACKENRIDGE J. I take it the certificate of the commissioners, that the lottery was drawn, or the drawing finished, is not conclusive evidence that the drawing was according to the scheme, and in all things regular, so that any one interested in the lottery is barred from shewing the contrary. If so, the question drawn or not drawn is open for examination. For it is one thing to be drawn in the idea of the commissioners, and another thing to be drawn in contemplation of the law. Actual drawing and legal drawing are two different things. That the lottery is finished drawing, and that it has been drawn properly, are not the same. If so, the drawing in this case would not seem to me to have been regular, and it is competent to us to examine, for the mode and manner of the drawing is made a part of the case stated to us.

The omitting to put certain numbers in the wheel, the duplicates of other numbers in their stead, and the changing a duplicate of one number and putting in a number for which it was supposed it was intended, a day or two before the drawing finished, were great irregularities. It does not appear to me allowable to shew that the error could not have affected the fortune of a ticket; for that involves a calculation of chances, to the uncertainty of which a holder ought not to be subjected. Nor will it be allowable to shew that the fortune of a ticket was not affected; for it is not in the power of the human mind to ascertain, what might have been the fate of a number accompanied with other numbers, or in other words what might have been the disposition of Providence in favour of a number, had other numbers been in the wheel, which ought to have been in. But a complaint on this ground may be waived, and it will not be in the mouth of any one to consider it as drawn for one purpose, and not for another; as for instance, to take a prize drawn under it, and at the same

1810.

NEILSON
v.
MOTT.

time refuse to pay for another ticket which has been drawn a blank. Now the defendant had purchased a number of tickets and retained them. He has returned none. It is presumable he has drawn prizes for some of those. Shall he not pay for the whole, on the allegation that the lottery is not yet drawn, or the drawing finished? He is estopped in my opinion from being heard on this allegation. He has waived the irregularity, and has not considered the drawing void. *Qui sentit commodum, debet sentire et onus.* He cannot be admitted to affirm and disaffirm at the same time. He has acquiesced in the drawing so far as to retain the tickets purchased, and it seems to me ought to pay for them as he had promised or bound himself to do. So that I differ a little as to entering into the consideration of whether injury would have resulted from the irregularity of the drawing. Yet I concur in affirming judgment, on the ground of waiving the objection by retaining the tickets.

Judgment affirmed.