[LOTTERY.]

## BRENT and others v. DAVIS.

The scheme of a lottery contained a stationary prize for the first drawn number on each of twelve days, during which the drawing was to continue, and the first drawn number on the tenth day was to be entitled to 30,000 dollars, payable in part by three hundred tickets, from Nos. 501 to 800, inclusive. No. 623, one of the 300 tickets to be given in part payment of the said prize, was drawn first on that day, and decided to be entitled to the prize of 30,000 dollars. After the drawing for the day was concluded, the managers reversed this decision, and awarded the prize to No. 4,760, which was drawn next to No. 623, and had drawn a prize of twenty-five dollars, which they decreed to No. 623.

In drawing the same lottery, it was discovered on the last day, that the wheel of blanks and prizes contained one blank less than ought to have been put into it; and to remedy this mistake an additional blank was thrown in.

In an action brought by the managers against a person who had purchased the whole lottery, for the purchase money, it was held, that these irregularities did not vitiate the drawing of the lottery, the conduct of the managers having been bona fide, and the affirmance of their acts not furnishing any inducement to the repetition of the same mistake, nor any motive for misconduct of any description.

Quære, Whether the ticket No. 623, or No. 4,760, was entitled to the prize of 30,000 dollars?

1825.          ERROR to the Circuit Court for the District

Brent
v.
Davis.

of Columbia.

This cause was argued by Mr. *Key*, for the

March 14th. plaintiffs, and by Mr. *Swann* and Mr. *Jones*, for the defendant.

March 17th.          Mr. Chief Justice MARSHALL delivered the opinion of the Court.

The defendant was the purchaser of the first class of a lottery to be drawn in the city of Washington, conformably to a scheme agreed on between the plaintiffs, who had been appointed managers, and himself; and the declaration is on the penalty of the bond given for the sum of 10,000 dollars, conditioned for the performance of articles entered into between them, one of which was, that he should pay the said sum of 10,000 dollars to the plaintiffs within sixty days after the lottery should be completed.

The defendant prayed oyer of the bond, and of the condition; after which the following entry is made: " *Non damnificatus* pleaded, and issue, with leave to give the special matter in evidence on both sides."

A jury was impanelled, who found a special verdict, which states at large the by-law of the corporation authorizing the lottery, the appointment of the managers, their sale of the first class to Davis, the scheme of the lottery, and the agreement entered into by him with them.

The verdict then states, that the managers, and the said Davis, proceeded to draw the said

lottery, in the course of which, certain irregularities took place, which are detailed at large; and the whole progress of the lottery to its conclusion is stated.

The scheme contains a stationary prize for the first drawn number on each of twelve days, during which the drawing was to continue; which were not put into the numerical wheel. The first drawn number on the 10th day was to be entitled to 30,000 dollars, payable in part by three hundred tickets, from numbers 501 to 800 inclusive. No. 623, one of the three hundred tickets to be given in part payment of the said prize, was drawn first on that day, which was immediately proclaimed by the managers, and the prize awarded to it, by making the usual entry in a book kept for that purpose.

After the drawing for that day was concluded, the managers reconsidered their judgment, awarding the prize of 30,000 dollars to No. 623, and reversed it. They then awarded the prize to No. 4,760, which was drawn next to 623, and had drawn a prize of twenty-five dollars, which prize they decreed to No. 623; and the original entries made in the book for the registration of prizes, were transposed so as to conform to this last determination.

On the last day, it was discovered, that the wheel of blanks and prizes contained one blank less than ought to have been put into it; and to remedy this mistake, the managers, and the said Davis, agreed to throw in an additional blank.

The verdict appears to have been intended not, only for this cause, but for another suit also, which was brought for the benefit of the proprietors of a ticket which had drawn a prize of 10,000 dollars, by the Corporation of Washington against one of the managers, on a bond given for the performance of his duty. It concludes with the following findings: " If, upon the whole matter, the law be for the plaintiffs, so as to entitle the plaintiffs to demand and have of the defendant in this action, the sum of 10,000 dollars, in and by the agreement recited in the condition of the bond given by the said Gideon Davis to the said managers aforesaid, sixty days after the drawing of the said lottery is completed, then we find for the plaintiffs the debt in the declaration mentioned, and one cent damages, to be discharged by the payment of 10,000 dollars.

" And if the proprietors of the said prize tickets, or the said proprietors of the said ticket No. 1,037, be entitled to demand and have the amount of the several prizes drawn against their respective tickets in the course of the drawings as aforesaid, after making the deduction of fifteen per cent. according to the said scheme, and if the proprietors of the said ticket No. 1,037, be entitled to demand and receive payment of the said prize of 10,000 dollars, with such deduction as aforesaid against the defendant in this action, then we find for the plaintiffs the farther sum of 8,500 dollars, to the use of the said purchasers and proprietors of the said ticket No. 1,037, in equal shares and proportions aforesaid. And if,

upon the whole matter, the law be for the defendant, we find for the defendant."

The judgment of the Court was in favour of the defendant; and that judgment is now before this Court on a writ of error.

If, through the confusion which is introduced into this record by the extreme irregularity of the proceedings, the Court can perceive that the plaintiffs have a real cause of action which may be barred by this judgment, the justice of the case requires that it should be reversed, although the great fault in pleading has been committed by the plaintiffs in failing to assign any breach of the condition of the bond on which the suit was instituted.

The suit is supposed to be brought for the recovery of the 10,000 dollars which the defendant engaged to pay sixty days after the lottery should be drawn. This claim is resisted, on the plea that the lottery, in point of law, is not yet drawn; that the irregularities stated in the verdict have vitiated the whole transaction; that the lottery must be redrawn; and that no right of action can accrue to the plaintiffs until sixty days after such redrawing shall be concluded.

The right of the plaintiffs, then, to maintain this action, depends on the legality of the drawing as found in the special verdict.

The defendant insists that two errors have been committed in drawing the lottery, which vitiate the whole transaction. The first is the proceeding respecting the first drawn ticket on the 10th day; and the last the circumstances in

1825.

Brent
v.
Davis.

relation to the deficient ticket in the wheel of blanks and prizes.

If the ticket which was first drawn in fact, ought to be considered as entitled to the prize, as was first decided by the managers, then no irregularity whatever took place in their proceedings with regard to this ticket, and this objection is clearly at an end. If the last decision of the managers was right, still there was no irregularity in the drawing, unless the ticket No. 623 ought to have been restored to the wheel, and have taken its chance for a blank or a prize. We are not satisfied that the managers ought to have taken this course. The ticket was properly put in the wheel, and was consequently liable to be drawn out of it at any time. The scheme did not say that if any of those tickets which were to be paid in part discharge of the stationary prizes should itself draw the prize, it should be returned to the wheel and redrawn; and great objections would, without doubt, have been made to such a proceeding. It would have diminished the chance of every remaining ticket for the undrawn prizes, and would have constituted a much more valid objection than can be made to what was actually done. Had No. 623 been replaced in the wheel, and been fortunate enough again to draw a large prize, it would have been very difficult to sustain its title to that prize. This first objection to the conduct of the managers is not, we think, supported.

More difficulty is presented by the last. The mistake in the number of tickets placed in the

wheel is undoubtedly an irregularity; but the effect it ought to have on the lottery is not so obvious. The ticket not put in the wheel was a blank; and, consequently, the omission did not diminish the chances of the adventurers. The last drawn number would find no corresponding ticket in the other wheel; but the chance of each to be the last drawn was precisely the same as the chance of each would have been to draw the blank, which ought to have been in the wheel. Had the lottery been completed without attempting to correct the error by throwing in another blank, the owner of the last drawn ticket would have been in the same situation as if the blank had remained in the wheel; and if he could be considered as having any just cause of complaint, it would seem more reasonable that the proprietors of the lottery should restore him the price of his ticket, than that the whole proceeding should be declared a nullity. The general quiet is more consulted by considering his particular contract as void for want of consideration, than by annulling all the rights acquired in the course of the drawing.

We do not think the case materially varied by placing the blank in the wheel in the course of the last day. The tickets previously drawn could not be affected by this act. The rights to prizes which had been previously vested could not be devested by this act. It could affect nothing which had been done, and was of importance to those tickets only which remained in the wheel. It did not in the slightest degree vary their

chance. There were the same number of prizes and the same number of blanks, with this only difference—had the blank not been put in the wheel, the last ticket would have drawn nothing; whereas by putting it in the wheel, it did not necessarily fall to the lot of the last ticket. But the aggregate of chances remained precisely the same. It appears to have been one of those unimportant incidents, which, having been found to be accidental, ought not to have so essential and so disquieting an effect as unsettling all that had been done would have.

The establishment of the lottery thus drawn can be attended with no pernicious consequence. The transaction was, throughout, perfectly fair; and if the managers have committed an error, it was unintentional, and unimportant. The affirmance of their acts can furnish no inducement to the repetition of the same mistakes; nor any motive for misconduct of any description. But let it be settled, that the absence of a blank at the conclusion of a lottery shall vitiate the whole transaction, and it is not difficult to perceive how frequently motives may exist for producing that state of things. However questionable may be the policy of tolerating lotteries, there can be no question respecting the policy of removing, as far as possible, from those who are concerned in them, all temptation to fraud.

The case of *Madison and others* v. *Vaughan*, decided in the Court of Appeals of Virginia, is supposed by the defendants to be an authority for declaring that this lottery ought to be redrawn,

In that case, a number corresponding to the number of one of the tickets was not put into the wheel, and two books more than the proper number were put into it. Chancellor Wythe considered the lottery as well drawn ; but his decree was reversed in the Court of Appeals. Supposing the decree of reversal to be correct, there is some difference between the cases. One ticket not being in the wheel, the proprietor of it did not partake of the chance to which every adventurer had an equal right ; and there being two more blanks in the wheel than were allowed by the scheme, the chances of every ticket were diminished. If when all the numbers for the tickets which had been put in the wheel were drawn, two blanks had remained undrawn, it would be difficult to show that any injury had been done to a ticket-holder by the two additional blanks ; but if one or two prizes had remained undrawn, it would be obvious that some ticket had drawn a blank which ought to have drawn a prize, and this circumstance would have afforded stronger reason for the decree that the whole proceeding must be considered as a nullity.

The case of *Neilson* v. *Mott*, (2 *Binn.* 301.) was a suit brought by the proprietor of a lottery against a purchaser of 500 lottery tickets, on a note given by him for the purchase money, which was payable one day after the conclusion of the drawing of the lottery. In the wheel containing the numbers of the tickets, the numbers of thirty-nine tickets were omitted, and in the same wheel, there were duplicates of thirty-nine num-

bers. The proprietors had satisfied all the holders of the duplicate numbers except four or five, and had offered to indemnify all by public advertisement. A day or two before the last day's drawing, the managers opened the wheel, and discovered that there was one number omitted and another put in twice, which they altered.

The defendant resisted the payment of his note, because the lottery was not legally drawn, the whole being vitiated by this mistake.

Judgment was given for the plaintiff, on the ground that the drawing was not vitiated by these irregularities. Two of the Judges were of opinion, that as the defendant had sustained no injury by them, he could not avail himself of them ; and the third, (the Court consisting of three,) thought he had waived his right by not returning his tickets, and by receiving the prizes he had drawn.

The case of *Schinotti* v. *Bumstead and others*, (6 *D. & E.* 646.) was an action brought by the holder of a ticket claiming a prize allotted in the scheme to that which should be last drawn in the lottery.

The number of one ticket had not been put into the wheel; and the demand made by the owner of the ticket which was last actually drawn, was resisted, on the ground that the ticket not yet drawn, for which a correspondent blank remained in the wheel, must be the last. Lord Kenyon said, that as the plaintiff's ticket was the last drawn, he is entitled to the prize ; the

only competitor with him was the owner of a ticket which never was drawn, and that person has no claim to it whatever.

So far as respects the omission to put the number of one ticket into the wheel, this case bears an exact resemblance to *Madison et al.* v. *Vaughan,* and is, perhaps, stronger than the case under consideration. The omission of a ticket is, at least, as irregular and as important as the omission of a blank, and yet, in *Schinotti* v. *Bumstead and others,* no suggestion was made against the validity of the drawing.

Upon these authorities, and upon the reason and substantial justice of the case, this Court is of opinion, that the lottery in the special verdict mentioned, has been legally drawn, and that the defendant became liable to the plaintiffs, sixty days after it was concluded, for the sum of 10,000 dollars. The judgment, therefore, in favour of the defendant, must be reversed. But the pleadings are too defective to sustain a judgment on this verdict for the plaintiffs. The verdict, therefore, and the pleadings, up to the declaration, must be set aside, and the cause remanded to the Circuit Court, that farther proceedings may be had therein according to law.

Judgment reversed, and a *venire facias de novo* awarded.