CHAPMAN (BUTTS v.). See Case No. 2,257.

CHAPMAN (CRUMP v.). See Case No. 3,455.

CHAPMAN (ELLICOTT v.). See Case No. 4,385.

CHAPMAN v. The EMPIRE STATE. See Cases Nos. 4,473–4,475.

---

## Case No. 2,604.

### CHAPMAN v. FENWICK.

[4 Cranch, C. C. 431.] [1]

Circuit Court, District of Columbia. March Term, 1834. [2]

MANUMISSION OF SLAVES — PREJUDICE OF CREDITORS—CHARGING DEBTS ON REALTY.

1. A testatrix charged her lands, as well as her personal assets, with the payment of her debts and legacies, and by her will manumitted certain of her slaves, to take effect at her death. The personal assets were not sufficient, without the slaves, but with the real estate were more than sufficient, to pay the debts. Held, that such manumission was not in prejudice of the creditors, and that the slaves were entitled to their freedom.

[See note at end of case.]

2. If the manumission is to be considered as a specific legacy, the assent of the executor was given by suffering the negroes to go at large as free for a period of eight years after the death of the testatrix.

3. If there be a fund for the payment of debts and pecuniary legacies, the executor may be compelled to assent to a specific legacy.

4. A specific legacy shall not abate or contribute, if there be enough without it.

5. A devise of real estate, "after payment of the debts," is a charge of the debts upon the real estate.

6. An assent to a legacy cannot be revoked.

7. Emancipation by will stands on stronger ground than a specific legacy, and does not need the assent of the executor.

8. The burden of proof lies on the creditors to show that an emancipation by will is "in their prejudice."

This was a petition for freedom [by two negroes, Eliza and Kitty Chapman] under the will of Mrs. Frances Edelin, and the act of Maryland of 1796 (chapter 67, § 13).

Mr. Key, for petitioners, cited two cases decided by this court, namely, Thompson v. Clarke, June, 1817 [Case No. 13,951], and Fidelio v. Dermott, June, 1807 [Id. 4,754]; Gains-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in Fenwick v. Chapman, 9 Pet. (34 U. S.) 461.]

borough v. Gainsborough, 2 Vern. 252; 2 Fonb. 291.

W. L. Brent, for respondent [Robert Fenwick], cited and relied upon the case of George v. Corse's Adm'r, 2 Har. & G. 1.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). Mrs. Frances Edelin, the then owner of the petitioners, on the 2d of November, 1825, made her will, in which she says, "After my debts and funeral charges are paid, I devise and bequeath as follows: I give and bequeath to my nephew John B. Edelin the store-house and lot," &c. (describing it). She then goes on to make sundry other devises of real estate, the last of which is to her nephew Richard James Edelin, of a small house and lot, "with the proviso that the negroes which are hereinafter mentioned to be free to live in the back room of the said house." She then bequeaths to the same nephew a mulatto man named Henry, and to her nephew John B. Edelin, she gives a negro boy named John; to her brother George, a black man named Bill; and to her niece Eliza Queen, a negro girl named Harriett, and a locket and ring. Then follows this clause: "Item, negro woman Letty, her daughter Kitty, a mulatto, with her three children, to wit, Eliza, Robert, and Kitty Jane, with future increase, and an old woman named Lucy, I do hereby declare them free at and after my death; and they shall have the right to live in and occupy the backroom in the house and lot I have given and bequeathed to my nephew, Richard James Edelin. To the two older negro women I give them and bequeath ten dollars a year to each of them as long as they live; and ten dollars a year, during two years after my death, exclusive of the year in which I die, to mulatto Kitty." She then charges the land, devised to her nephews, with annuities of ten dollars to each of the negroes, Lucy, Letty and Kitty. Exclusive of the specific devises and bequests, her estate was insufficient to pay the testatrix's debts; and it is admitted that the personal estate alone, exclusive of the value of the petitioners, was also insufficient without the aid of the real; but that the real and personal estate, exclusive of the value of the petitioners, was sufficient. From the death of the testatrix, in November or December, 1825, until July, 1833, the petitioners have been suffered by the executor to go at large, and act as free. On the 16th of July, 1833, upon the ex parte petition of the executor, stating that the testatrix, by her will, directed that certain of the negroes contained in the inventory, should be free, after her death; that he has since discovered that there will not be assets enough to discharge her debts, and praying that the negroes may be sold; the orphans' court ordered the executor "to sell all the personal estate." By the executor's account, settled with the orphans' court on the same 16th of July, 1833,

in which he is charged with these negroes, valued at $805, the balance against him appeared to be $745.90, which, by a subsequent account rendered on the 12th of November, 1833, he appears to have accounted for to the satisfaction of the orphans' court; so that, if the petitioners obtain their freedom, he will have overpaid the sum of $752.27. But the executor had, between July and November, 1833, sold the petitioners to the defendant, Robert Fenwick, so that, if the petitioners obtain their freedom, the executor will have to refund the purchase money to the defendant, and look to the real estate.

The question for the decision of the court is whether, under these circumstances, the manumitting clause of the will be, or be not, "in prejudice of creditors?" By the act of Maryland of 1796 (chapter 67, § 13), it is enacted, "That it shall be lawful for any person or persons competent, in law, to make a valid will, to grant freedom to, and effect the manumission of, any slave or slaves belonging to such person or persons, by his or their last will; and such manumission may be made to take effect at the death of the testator, or at such other periods as may be limited in such will; but no manumission, hereafter to be made by will, shall be effectual to give freedom to any slave or slaves, if the same shall be in prejudice of creditors." If the manumission is to be considered as a legacy, the the assent of the executor is necessary to perfect the title of the petitioners. For, as the executor is liable for the debts of his testator, to the full extent of the assets, and, as the debts must be paid before legacies, unless the assets are sufficient for both, it is necessary, for his own protection, that he should have the power of withholding the legacies until it is ascertained that the residue of the assets will be sufficient to pay all debts. "But, if there is a fund to pay the debts, and the executor then refuses his assent to a legacy, he may be compelled to give it, either by the spiritual court" (in England), "or by a court of equity." March, 96; Jac. Law Dict. tit. "Legacy." In case of deficiency of assets, however, all the general legacies must abate, proportionably, in order to pay the debts; but a specific legacy is not to abate at all, or allow anything, by way of abatement, unless there be not sufficient without it. Webb v. Webb, 2 Vern. 111. If a manumission by will be a legacy, it is a specific legacy; for it can admit of no satisfaction but the thing itself.

A testator has a right to dispose of all his personal estate in specific legacies, and charge his lands with the payment of his debts. The creditors have no right to anything but payment of their debts. It is wholly unimportant to them, out of which fund they are paid; and they have no right to compel the executor to sell the property specifically bequeathed, if the fund provided by the will be sufficient. Their remedy at law is against the executor, to charge him

de bonis testatoris, in the first instance. It is true the executor could not plead plene administravit in consequence of delivering to the legatees their respective legacies; but he might raise the money out of the lands, and pay the debts; and it would be his duty to do so; for the will is his law, and he is bound to execute it according to the intention of the testator. And when lands, devised to an executor, for payment of debts, are sold by the executor, the money in his hands will be assets at law. Hawker v. Buckland, 2 Vern. 106; Greaves v. Powell, Id. 248; Anon., Id. 405. It seems to us clear, that, by this will, the testatrix has charged her real estate, as well as her personal, with the payment of her debts. She commences her will, thus: "After my debts and funeral charges are paid, I devise and bequeath as follows: I give and bequeath to my nephew, John B. Edelin, the store-house and lot," &c.; and this devise is followed by other devises of real estate to other nephews, and, among others, to Richard James Edelin; and she makes those two nephews her executors, together with John Brown. These devises were to take place only after her debts and funeral charges should be paid; and she makes two of her devisees her executors. The word "devise" is exclusively applicable to real estate. In the case of Trott v. Vernon, 2 Vern. 708, the lord chancellor says: "It is but natural to suppose that all persons would provide for the payment of their just debts; and, directing them to be paid in the first place, imports, that, before any devise by his will should take place, his debts, etc., should be paid;" and he seemed to lay some stress upon the word "devise," and decreed the real estate to be liable to the payment of the debts. See, also, Beachcroft v. Beachcroft, Id. 690. When the real and the personal estate are both liable to the payment of the debts, it is entirely immaterial to the creditors whether either of them be or be not insufficient, by itself, if both together are sufficient; and, in such case, the bequest of a specific legacy cannot be said to be in prejudice of creditors. A will must be so construed and so executed as to carry into effect the whole intention of the testator. Here it was as clearly the intention of the testator that the petitioners should have their freedom, as that the debts should be paid.

If emancipation by will is to be considered as a specific legacy, to which the assent of the executor is necessary, that assent was given when the petitioners were permitted by him to go at large and act as if they were free; which they did, from the death of the testatrix, in 1825, to the year 1833. Much slighter circumstances than this have been considered sufficient evidence of the assent of an executor to a legacy. Went. Off. Ex'r, 225, says, "There may be an assent implied as well as express; for if, in the devise or bequest, the legatee be appointed to do some act, as in respect of the legacy, and the executor doth accept the performance thereof, this amounteth to an assent." "So, if a horse be bequeathed, and one, offering to buy him of the executor himself, he directeth him to go and buy the horse of the legatee; or if the executor himself offer money to the legatee, for the horse, this implieth an assent that it should be the legatee's by the will." And in Bac. Abr. "Legacy," L, it is said that "any expression or act done by the executor which shows his concurrence or agreement, to the thing demised, will amount to an assent." Godol. 148; Plowd. 525; 1 Vern. 90; Id. 460; 2 Vern. 358. And Wentworth, in pages 226 and 227, says: "If the executor do once declare his assent that the legatee shall have his legacy, he may then enter into it, or take it, notwithstanding the executor's countermand or revocation of his assent after." And in Bac. Abr. it is said that, "as an assent is but a perfecting act, the executor cannot, after he has once given it, revoke the same; neither can it be given on condition, or on any limitation or restriction whatsoever. March, 136; Cro. Jac. 614, 615; 2 Vent. 360; 1 Leon. 130, 131." And in Burnley v. Lambert, 1 Wash. [Va.] 312, the court of appeals of Virginia say: "After the assent of the executor, the legal property is completely vested in the legatee, and cannot, at law, be divested by the creditors." If the emancipation be a specific legacy, and if the assent of the executor has not been given, inasmuch as the real and personal estate are both equally charged by this will, and as that fund is admitted to be sufficient without the value of the petitioners, he may be compelled to assent. But emancipation stands on stronger ground than a specific legacy. The assent of the executor is not necessary to the perfection of the title. By the general provision of the 13th section of the Maryland act of 1796 (chapter 67), the manumission is complete and perfected; but liable to be defeated if it be "in prejudice of creditors;" a fact which is to be proved by the party denying the validity of the manumission. There is, in this respect, a marked distinction between the language used in the act of 1752, and that used in the act of 1796. The language of the fifth section of the former act is, "that any deed or writing whereby freedom shall be given," &c., "shall be good," &c., "so that such deed or writing be not in prejudice of creditors." The words, "so that," are here equivalent to "if;" and the construction would be the same as if the language had been "any writing," &c., shall be good, if it shall not be "in prejudice of creditors," and then the party claiming title to freedom would be obliged to show that the writing was not in prejudice of creditors. But the language of the act of 1796, after expressly repealing the act of 1752, is, "it shall be lawful for any person capable in law to make a valid will to grant freedom to, and

effect the manumission of, any slave, &c., by his last will;" "but no manumission, hereafter to be made by will, shall be effectual to give freedom to any slave or slaves if the same be in prejudice of creditors." Here the same rule of construction, which, under the act of 1752, would require the party claiming freedom under a writing, to show that the manumission would not be in prejudice of creditors, requires of the party denying the efficacy of the manumission, under the act of 1796, to show that the manumission is in prejudice of creditors. The words, "so that," in the act of 1752, and the word, "if," in that of 1796, create a condition. Under the first, the manumission itself is conditional; under the second, the inefficacy of the manumission is conditional. Hence, the burden of proof, under the former act, was upon the claimant of freedom; under the latter, it was upon the other side. It is not, however, material, in the present cause, on which party the burden of proof lies; for the fact is admitted, that the real and personal estate are sufficient, without the value of the petitioners, to pay all the debts, so that the manumission cannot be in prejudice of creditors.

But here we are met by the judgment of the court of appeals in Maryland, in the case of George v. Corse's Adm'r, 2 Har. & G. 1, in which it was decided by three of the judges that in a suit by negroes against the executor of the will of a testator who manumitted the negroes by his will, and expressly directed his real estate to be sold by his executor for the payment of his debts, if the personal estate, exclusive of the negroes, should be insufficient to pay all his debt, the question could not be decided whether the manumission was in prejudice; because the executor was not competent to admit the fact, that the real and personal estate, exclusive of the negroes, was sufficient to pay all the debts; and the reason, given by one of the judges, is, that "it would be an issue to which the creditors are no party, and to protect whose interest nobody appears." That, "as far as relates to the personalty, the executor is competent to act for all who are concerned; but in trying the facts whether there be assets by descent in the hands of the heir, and what is the amount thereof, he has no interest, either personally or in right of representation. Virtute officii he is neither bound to acquire, nor presumed to possess, any knowledge upon the subject. With the title he is unacquainted; with the value of the land, equally uninformed." In this opinion we are unable to concur. When lands are devised to the executor to be sold for the payment of debts, or when the lands are charged with the payment of the debts, and a power is given to the executor to sell them, the lands are as much a fund in his hands for that purpose, as the goods and chattels; and he represents the creditors, in regard to the lands, so far as their interests are concerned, as much as he does in regard to the personal estate; and the creditors are as much a party to the issue in respect of the lands, as they are in respect of the goods and chattels. When he is charged with the sale of his testator's lands, for the payment of debts, he is as much bound to inquire in regard to the lands as he is in regard to the personal estate; for it is his duty to execute the whole of his testator's will; and in such a case the creditors have as good a right to look to the land, through him, for the payment of their debts, as they have to look to the goods and chattels through him. If under such a will, the sufficiency of the real estate for the payment of the debts cannot be tried in a suit against the executor, and if the negroes are bound to show that the manumission is not in prejudice of creditors, how can they obtain their freedom? Their only remedy is by petition, in a court of law, against the person who claims them as slaves. Neither the heirs nor the creditors can be made parties; for neither of them claims title to the petitioners; and if the executor does not represent the creditors, are they represented by the vendee of the executor? and will his admission of the sufficiency of the real estate be more prejudicial to the creditors than that of the executor?

If every manumission, by will, is taken to be prima facie in prejudice of creditors, and if the burden of proof be on the petitioners, nothing seems to us more clear than that it is competent to them to show, either that there are no creditors to be prejudiced; or that, if there be creditors, they cannot be prejudiced; whoever may be the person claiming to hold them under the testator. It would be strange indeed, if, in a suit against the only person claiming title to them, and the only person against whom they can maintain a suit to vindicate their right, they should be forbidden to give evidence of the fact which it is contended they are bound to show before their title can be complete. Can it be said, that they are to wait until some creditor shall have obtained judgment against the executor de bonis testatoris, and have seized the petitioners as a part of those goods? This would put it in the power of the executor to postpone, indefinitely, the enjoyment of their right, in case the fund provided by the testator for the payment of the debts should be sufficient. It would, however, probably, be admitted by the judges of the court of appeals in Maryland, who decided the case of George v. Corse's Adm'r, that in such a suit it is competent for the petitioners to show that there was a sufficiency of personal estate, but not of the real, although the fund provided by the testator for the payment of the debts should be the proceeds of sales of real estate to be made by the executor for that purpose. But, for the reasons before stated, we think there is no difference, in this respect, between the

right of the executor in such a case, and in such a suit, to represent the creditors, in regard to the real estate, and his right to represent them in regard to the personal estate.

Upon the whole, therefore, we are of opinion, that in the present case the testatrix, by her will, bound her real estate, as well as her personal, for the payment of her debts, and that, as it is admitted by the defendant, who is the vendee of the executor, that the real and personal estate of the testatrix, exclusive of the petitioners, was, at her death, sufficient to pay all her debts, the manumission of the petitioners, by the will, was not in prejudice of her creditors, and that the judgment, upon the case stated, must be rendered for the petitioners.