Hugh A. Garland, Plaintiff in error, v. George M. Davis, Defendant.

This was an action on the case, brought by Davis against Garland, the former clerk of the House of Representatives. The declaration set out, by way of inducement, a contract between Davis and Franklin, the predecessor in office of Garland, and then charged upon Garland a wrongful and injurious neglect and refusal to furnish a copy of certain laws to Davis, as had been agreed by Franklin.

The plea was "non assumpsit," and the issue and verdict followed the plea.

This court can notice a material and incurable defect in the pleadings and verdict, as they are represented in the record to have existed in the court below, although such defect is not noticed in the bill of exceptions, nor suggested by the counsel in argument here.

When a declaration sounds in tort and the plea is "non assumpsit," such a plea would be bad, on demurrer. If not demurred to, and the case goes to trial (the issue and verdict following the plea), the defect is so material that it is not cured by verdict, under the statute of jeofails.

Bad pleas, which are cured by verdict, are those which, although they would be bad on demurrer because wrong in form, yet still contain enough of substance to put in issue all the material parts of the declaration.

The provision by Congress, in relation to amendments, which is found in the 32d section of the Judiciary Act of 1789, is similar to that of 32 Hen. 8, but certainly not broader.

The issue was an immaterial issue.

The opinion of this court in Patterson v. The United States, 2 Wheaton, 221, reviewed and reaffirmed, namely, — "Whether the jury find a general or a special verdict, it is their duty to decide the very point in issue, and although the court in which it is tried may give form to a general finding, so as to make it harmonize with the issue, yet if it appear to that court, or to the appellate court, that the finding is different from the issue, or is confined only to a part of the matter in issue, no judgment can be rendered on the verdict."

This principle applies equally to a plea varying from the substance of the declaration.

In this case, the verdict does not find any of the misfeasance charged upon the defendant.

If the merits of the case were passed upon in the court below, it was illegally done, because no evidence was competent except such as related to the promise described in the declaration.

This court abstains from awarding a repleader, for the reasons stated in the opinion, but remands the case so that the pleadings may be amended.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

It was an action on the case, brought by Davis, the defendant in error, against Garland, the clerk of the House of Representatives.

The circumstances under which the suit was brought are thus set forth in the plaintiff's declaration, which was filed on the 16th of September, 1839.

"DISTRICT OF COLUMBIA,
   *Washington county, to wit :—*

"Hugh A. Garland, late of said county, was attached to answer to George M. Davis, in a plea of trespass on the case, and so forth. And whereupon the said Davis, by H. M. Morfit, his attorney, complains, that whereas the House of Representatives of the United States had, at the first session of the 25th Congress, which was before the committing of the grievances herein complained of, passed a resolution that the clerk of said House be, among other things, directed to caus·· to be printed a ninth volume of the laws of the United States, after the manner of the eighth volume thereof ; and being so directed, in pursuance of such resolution the then clerk of said House, to wit, Walter S. Franklin, in the month of July of the year 1838, at the county aforesaid, had employed the said plaintiff, and, in his capacity of clerk of said House, had agreed and contracted with said plaintiff to print a ninth volume of said laws in the manner as resolved, and to deliver from his office, as clerk of the House aforesaid, a copy of said laws to said plaintiff, to enable him to print the same, and had directed the chief clerk in the office of said clerk of the House of Rep ɛ·entatives to prepare the said copy, and deliver the same to said plaintiff ; he, the said plaintiff, in consideration thereof, had made ample arrangements, and employed the means to print the said ninth volume of said laws, and was in all respects ready and willing to print the same, after the manner as directed in said resolution, when the said Walter S. Franklin departed this life, and the said Hugh A. Garland was elected his successor as clerk of the House of Representatives aforesaid, and had charge of the laws aforesaid, from which the said ninth volume was to be printed. And the said plaintiff having the contract aforesaid, and in consideration thereof having prepared for the faithful execution of the terms thereof according to said resolution, and having also, soon after the election of said defendant as clerk aforesaid, to wit, on or about the month of December, in the year 1838, at the county aforesaid, and before the committing of the grievances herein complained of, the said defendant was notified of said subsisting contract, and of plaintiff's readiness, and willingness, and preparation to comply with the same, according to the said resolution ; all of which notification of contract and preparation, as given aforesaid, the said plaintiff avers, and the said defendant was in duty bound, as clerk aforesaid, to deliver a copy of said

Garland v. Davis.

laws to said plaintiff, in consequence and by reason of the said resolution of Congress and the said contract of said plaintiff.    And he the said plaintiff afterwards, to wit, on or about the 1st day of February, 1839, at the county aforesaid, asked and demanded of said defendant, who had charge of said laws from which the said ninth volume was to be printed, as clerk of the House of Representatives aforesaid, a copy of said laws under his charge, for the purpose of printing the same according to said contract, and in the manner as. directed in said resolution, and without which copy from the office of said clerk the said plaintiff could not print the said laws as directed in . said resolution ; that the said defendant, contriving and wrongfully and injuriously intending to injure the said plaintiff, and to deprive him of the profits, and emoluments, and advantages which he might and otherwise would have derived and acquired from the printing of said ninth volume of the laws of the United States, and of the profits, emoluments, and advantages of the said subsisting · contract, well knowing that, without a copy of said laws from his said office, the plaintiff could not print the same as directed in said resolution ; and the said defendant being in duty . bound to deliver a copy of said laws, as clerk aforesaid, to said plaintiff, to comply with said resolution of Congress, and with plaintiff's contract aforesaid, afterwards, to wit, on or about the 1st day of February, 1839, at the county aforesaid, and on divers other days and times between that day and the day of the issuing the writ in this behalf, did wrongfully and injuriously refuse to deliver, or furnish or permit to be delivered from said office, or furnished therefrom to said plaintiff, a copy of the laws of the United States for printing the said ninth volume of said laws, as resolved in said resolution ; and did also wrongfully and injuriously refuse to allow the said plaintiff to print the said ninth volume of said· laws in the manner directed in said resolution, and did prevent and hinder him from printing the same.    By means whereof the said George M. Davis lost the printing of said ninth volume of said laws, and the benefit of said contract ; and hath b en hindered and prevented from making, deriving, and having the profits, emoluments, and advantages of such printing, and of the compliance, upon his part, with the said contract, and hath also lost his time, trouble, and money, in preparations for complying with said contract ; which profits, emoluments, and advantages [he] hath been so hindered from making, and time, trouble, and money he hath so lost in said preparations, were of great value, to wit, of the value of two thousand five hundred dollars, current money, and which profits and money he, the said plaintiff, might and would have had and received, but for the wrongful conduct of said defendant."

There was another count in the declaration, setting forth the same circumstances in a different manner.

The plea was "non assumpsit," upon which issue was joined, and the cause went on to trial. The record, after mentioning the names of the jury, proceeded thus : —

" Who, being empanelled and sworn to say the truth in the premises, upon their oath do say, that the said defendant did assume upon himself in manner and form as the aforesaid plaintiff above against him hath complained, and they assess the damages of the said plaintiff, sustained by reason of the nonperformance of the promise and assumption aforesaid, to the sum of nineteen hundred dollars current money."

A motion was then made in arrest of judgment for the following reasons, viz. : —

" 1. Because there is no cause of action stated in the first count of the plaintiff's declaration.

" 2. Ditto, as to the second count.

" 3. Because there is a general verdict, and one count is bad.
　　　　　　　　　　　　" F. S. KEY, *for defendant.*"

This motion was overruled, and judgment entered upon the verdict.

In the course of the trial, two bills of exceptions were taken on the part of the defendant, which were as follows : —

1st Exception. " In the trial of this cause, the plaintiff, having offered the resolution of Congress of 14th October, 1837, proved that in July, 1838, a verbal contract was made between the plaintiff and Walter Franklin, then clerk of the House of Representatives of the United States, for the printing of the ninth volume of the laws of Congress, in which it was agreed that the plaintiff should do the printing thereof on the same terms as had been previously agreed with plaintiff's father, who had died some short time before, and had been paid to said plaintiff's father for the eighth volume of the laws of the United States, and was to be paid for the same at the usual Congress prices, — the printing to be executed under the superintendence and direction of Samuel Burche, chief clerk of said House of Representatives ; that no minute or entry of said agreement was made in writing, among the books and papers of said Franklin's office ; that it is usual and customary for the contracts made on the authority of the House to be made verbally, and the same have always been received by the House and paid for ; and that the said plaintiff frequently, after the making of the said agreement, called on said Burche for the work, stating his readiness to proceed with the work, and did not receive the same, because the said Burche had not prepared the laws for publication.

" And then further proved, that the said Walter Franklin died in September, 1838, and the defendant was elected clerk of the House on the first Monday of December, 1838 ; that some time afterwards, in December, 1839, the said Burche, not having yet

prepared the said laws for said publication, and the said plaintiff waiting as before for the same, the said Garland was informed, about the 1st of January, 1839, of the contract so as aforesaid verbally made between the said Franklin and the plaintiff, and observed that he had understood such a resolution was passed, and that such a work was to be given out for printing, and that he considered that as the agreement was a verbal one it was not binding, and that he had the right to give the contract to whom he pleased; that afterwards, in about two months from the beginning of December, 1838, he was again called upon and informed of the said contract, verbally made with the plaintiff by the said Franklin, when he said he had made an agreement or a contract with one Langtree; and that the said Garland did make such agreement with said Langtree, and ordered the work not to be given to the said plaintiff, but to be given to said Langtree to be printed, which was done accordingly, and the plaintiff thereby prevented from doing the work.

" And further proved, that said plaintiff had made considerable preparations for the work, and had engaged Mr. Gideon to do the printing of the work, and had transferred to said Gideon his office and press, valued at $1,000, to be paid for by the profits of the work, — of all which the defendant was informed before he made the contract with Langtree; and that plaintiff suffered considerable loss by the taking away said contract; and that said Gideon, in the prosecution of his preparations for said work, had expended $600 or $700 for paper for that very work.

" And further, that at the time of making said verbal contract with said Franklin, the plaintiff asked him if it was necessary it should be reduced to writing, and was answered that it was not necessary, and was not usual; and also proved that there was no written contract in the office of the clerk for the printing of the eighth volume of the laws of the United States. — And that said Franklin knew and assented to the plaintiff's engaging said Gideon to do the said printing at the time of said contract; and that the defendant was advised by the clerks, before he made the contract with said Langtree, to be cautious and not get into difficulties by giving the work to another. And that no written contract with said Langtree, nor any memorandum thereof, appears in the office of said clerk.

" And upon the evidence aforesaid of the said plaintiff, the defendant, by his counsel, prayed the court to instruct the jury, that if the same was believed by the jury to be true, the plaintiff was not entitled to recover, which the court refused, — to which refusal defendant excepts, and prays the court to sign and seal this bill of exceptions, which is done this 14th day of April, 1842.

W. CRANCH. [SEAL.]
B. THRUSTON. [SEAL.]
JAS. S. MORSELL. [SEAL.]"

2d Exception. "And thereupon the defendant, on the said evidence, prayed the court to instruct the jury as follows :—

"If the jury believe from the evidence that the defendant, in making the subsequent contract with Langtree, and causing the compilation to be delivered to him to be printed, acted officially and *bonâ fide*, and not with corrupt motives, and verily believed that the prior contract made verbally with the plaintiff was not obligatory, then he is not liable to damages in this action upon the evidence aforesaid ; which also the court refused to give, — to which refusal defendant excepts, and prays the court to sign and seal this bill of exceptions, which is done accordingly, this 14th day of April, 1842.          W. CRANCH.          [SEAL.]
                                                    B. THRUSTON.          [SEAL.]
                                                    JAS. S. MORSELL. [SEAL.] "

Upon these two exceptions the case came up to this court.

It was argued by *Mr. Robert J. Brent*, for the plaintiff in error, and *Mr. Coxe*, for defendant.

*Mr. Brent*, for plaintiff.

The first count is defective in this :—

1st. It does not show any authority in the former clerk (Franklin) to make the contract on which Davis founds his claim, for the averment, that Franklin was "directed to *cause to be printed* a ninth volume of the laws, &c., after the manner of the eighth volume thereof," does not necessarily imply an authority to contract, inasmuch as that power could be executed by causing the volume to be printed by the regular printer of Congress, who might be entitled to all its printing.

All the facts stated in this count may be true, and yet Franklin have no power to make a contract. (See, as part of this argument, the Reports of House Committee in volume of Reports of Committees, 1840 – 41, No. 16, Rep. No. 101 and 215.)   Therefore I conclude that Franklin's authority as a public officer to make the contract with Davis does not sufficiently appear, and if so, it results as a corollary that it was his own unauthorized contract, and not binding on his official successor.

2d. If, however, it was Franklin's official contract, binding on his successor, then it was only binding on the appellant, as the agent of the House of Representatives, and the appellee's remedy should be against the House of Representatives, by appeal to its justice. (See on this, 1 D. & E. 674 – 678 ; Hodgson *v.* Dexter, 1 Cranch, 362 ; 7 Wendell, 254 ; 12 Wendell, 179 ; 18 Johns, 125 ; Chisolm *v.* Georgia, 2 Dallas, 419, 444 ; 1 D. & E. 172 ; 2 Cowen, 533.)

3d. If binding on Garland as clerk, yet this count shows no act

Garland *v.* Davis.

of his tending to establish any liability on his part to Davis, but a repudiation of the contract utterly.

4th. This count shows *no consideration* for the contract, for it is nowhere averred that Davis was *to be compensated*, nor is it suf-ficiently shown that Davis entered on the performance of this contract. (See Coggs *v.* Bernard, 2 Ld. Raym. 919, 920, and Elsee *v.* Gatward, 5 D. & E. 143.) Merely stating that Davis was prepared to execute the contract does not make a sufficient consideration.

5th. The contract, as herein shown, was to print after the manner of the eighth volume, and the count omits to show the manner of printing the eighth volume, and thus a material term of the con-tract is not shown.

Again, the second count is, in addition to the above objections made to first count, liable to the further objections : — 1st, that it shows · *by way of recital* a contract with Franklin *as clerk* (the consideration or terms of which are not given), and then sets forth no other ground for Garland's liability, except his being the successor to Franklin, and refusing to give the copy.

Now it is obvious that Franklin may have made a private or un-authorized contract as clerk, and it will not be contended that a clerk's contracts are *ipso facto* binding on his successor, without showing something more than his naked contract, as a ministerial officer is not supposed *ex officio* to be capable of making any contract he may choose.

2d. This count does not show that by the contract the clerk was to furnish the copy, but merely a subsequent promise by Franklin to furnish the copy, and yet the gravamen of it is the refusal of Garland to furnish a copy.

Again, it is manifest, on the face of both these counts, that no liability in defendant is shown, and that the declaration is in material respects uncertain and unmeaning according to the rules of pleading.

If either count is defective, the judgment should have been arrested. (5 D. & E. 143.)

The first exception sets forth all the evidence, and I con end its prayer should be granted, because, —

1st. The contract as proved was variant in this, that the printing was to be on the same terms as plaintiff's father had agreed for (8th vol.), and the declaration does not show any such terms in the contract.

2d. The declaration does not set forth the material qualification in the contract, that the printing was to be under direction of Burche. (See the statement of evidence.)

3d. The proof is, that payment was to be at usual Congress prices, and they are not averred in the declaration, nor shown in evidence.

4th. The proof is, that the printing was to be done under direction of Sam. Burche, and that Burche was the party in default in not preparing the laws ; how then could defendant give a copy until Burche's compilation was completed, which is nowhere shown in the evidence ?

Again, the evidence sets forth as the basis of Franklin's authority the resolution of 14th October, 1837 (which see in House Journal, 14th October, 1837, Extra Session, p. 191). It appears from the plaintiff's own evidence thus offered, that Franklin's power was *in limine* referrible to another resolution which should govern and control his power, and which resolution was not given in evidence, but can be seen in House Journal, 30th June, 1834, page 903 ; and also see House Journal, 25th June, 1836, page 1098.

Now the whole evidence either shows a complete authority in Franklin to make the contract, or it does not. If it shows his authority, then could Franklin be sued for nonperformance ? (See 1 Durn. & East, 172, and 2 Cowen, 533.) If he could not be sued, how can his successor in office ? And if his contract was unauthorized, his official successor cannot be bound by it.

Again, here is a public officer bound, we will suppose, to have the laws printed ; — he finds that his predecessor had never executed his power, and he feels the obligation to discharge his official duty. Is he to be obstructed in that duty by caveats and notices from A., B., and C., that, as clerk, he must comply with contracts of his predecessor, of which he has no proof but an assertion or an unsworn statement of a witness ? Has he even a discretion to determine whether his predecessor made a contract or not ? He finds the duty unexecuted by his predecessor, and he is bound to select either the public printer, if there be one, or to take the matter into his own hands, and perform it with his own agents. How dangerous it would be to suffer a clerk to be intimidated and delayed in matters of such high importance by the notices of every man who might set himself up as entitled by a verbal contract with his predecessor.

Again, it is to be regretted that the record does not contain the fact that there was, at the time of Franklin's contract, a regular printer, duly elected by Congress, and entitled to all its printing (see Report of Committee, *supra*, 1st point) ; but though the fact is not in the record, yet the resolution of 14th October, 1837, does not on its face imply any power to the clerk to make contracts for the printing, but only to cause a volume to be printed after the manner of the eighth volume and under a previous resolution, which, if incorporated as it ought to be as part of plaintiff's case, might have shown, that the *manner* of printing the eighth volume was by the *public printer*, and not by such person as the clerk might select.

Garland v. Davis.

Again, the former resolution ought to be produced as part of the plaintiff's case, and to fix the terms of the contract, and it is material, as, if shown, it might appear that the contract was not to be executed within a year, and therefore void under statute of frauds. (See Boydell v. Drummond, 11 East, 142.)

It does not appear from the record that Garland ever received any money to pay for such a contract, or that he acted with fraud or deceit.

On the second exception, I refer to Stockton and Stokes v. Kendall, 3 Howard's Rep. 97, 98.

*Mr. Coxe,* for defendant in error.

The first count in the declaration sets forth the resolution of the House of Reprentatives, directing the clerk to cause to be compiled a ninth volume of the laws, &c. ; that being so directed, the then clerk, Franklin, employed the plaintiff, and agreed and contracted with him in pursuance of said resolution. This being an action for a tort, and the contract referred to being mere inducement, not the gist of the action, such statement of the authority to contract, and of the actual contract, is in accordance with the strictest rules of pleading. Particularly after verdict such averments are sufficient.

The second, third, and fourth objections are founded upon a misapprehension of the nature of the action. It is not a suit brought upon a contract for the purpose of compelling its performance. In this case, Franklin acted as agent of the House in making the contract, and could not be held responsible for its execution. The suit is brought against Garland for an illegal, unauthorized act of his own, individually, in preventing the execution of the contract, and depriving plaintiff of the benefits which were to result to him from it, and remuneration for the expenditures he had made towards its performance. The main grounds of defence now urged were taken in the case of Freeman v. Otis, 9 Mass. 272.

Another case, Shepherd v. Lincoln, 17 Wend, 250, illustrates the distinction. That was a suit brought against defendant as superintendent of repairs of canal, and he was held responsible for an act of negligence or misfeasance.

Franklin made the contract as a public agent, and therefore never could have been made personally responsible for its nonexecution by the House. Garland does not pretend that he was instructed or directed by the House to annul that contract; his interference was unauthorized, and therefore he is answerable.

The general principle is, that when an agent acts within the scope of his authority he is not personally responsible, — recourse must be had to the principal ; but if he transcend his authority, he is personally liable.

The declaration is sufficient in averring the actual existence of

a contract. The terms of the contract are unimportant in this suit, and need not be averred. Even in an action brought on the contract itself, it is sufficient to aver it according to its legal effect, and it is unnecessary to set out more of it than suffices to show a cause of action. 2 Wend. 579 ; 8 Cow. 33, 9 ; 13 Johns. 224.

2d. The same answer may be given to the objections urged against the second count.

In an action brought for misfeasance, it is unnecessary to aver or prove any consideration for the contract. 20 Johns. 379.

3d. Upon the bills of exceptions. It is a sufficient answer to these exceptions to say, that they do not profess to be founded on *all* the evidence in the case. The first bill, after stating certain evidence as given by plaintiff on the trial, says (p. 14), "upon the evidence aforesaid of the said plaintiff, defendant prays," &c. It does not allege that this was the whole evidence given. This is a fatal and incurable defect in the case. For aught that appears, other and sufficient evidence may have been given, and the omission of it may have been the very reason why the instruction prayed was refused by the court. Plaintiff in error must establish the error in the judgment complained of ; every reasonable intendment should be in favor of the judgment. Ventress *v.* Smith, 10 Peters, 161.

2d. The only evidence stated in the bill of exceptions is such as was adduced by plaintiff. The prayer is, then, substantially a demurrer to the evidence. Every fact which it conduced to prove, and every conclusion inferrible from those facts, is admitted ; *mala fides* and oppression are fairly deducible from the facts proved. The jury has passed upon all the allegations in the declaration ; and if they went beyond the testimony, the proper remedy was by motion for a new trial. The jury took the case without any instruction whatever from the court.

The four specific objections now made imply that all the evidence is embodied in the record, which does not appear ; and they are founded upon the misapprehension already adverted to, in supposing this action to be brought upon a contract against a party to it to compel its performance. This has been shown to be an error.

The subsequent exceptions are all fully answered in what has been before said.

After the argument was closed, the court intimated to the counsel the difficulty arising from the irregular plea, issue, and verdict, compared with the declaration, upon which *Mr. Coxe* filed the following supplementary argument.

The difficulty now suggested by the court is understood to be this. The action is brought as for a tort, the plea is non assump-

sit. Issue being joined on this plea, verdict for plaintiff and judgment entered accordingly. Can this judgment be sustained upon these pleadings ?

1. The entry of the pleas is, in the Circuit Court, the act of the clerk, the defendant being at liberty to abide by the plea thus entered, or to plead *de novo*. If he does not amend, he adopts and abides by the plea filed by the clerk.

In this case, the plea of non assumpsit, if entirely wrong, is a mere clerical error, which would have been amended had it been brought to the notice of the court. If defendant had refused to amend, the plea would have been regarded as a nullity, and judgment entered for want of a plea. This plea was adopted by defendant, and is therefore to be regarded as his. The fault, if any, is his.

2. The action, though sounding in tort, is founded upon a contract. The existence of this contract was traversable, and on the trial it was necessary for plaintiff to prove it. The plea of non assumpsit may be so moulded as to make it a denial of the contract made between plaintiff and Franklin. As in covenant, the plea of *non est factum* is a good plea, though it merely puts in issue the actual execution of the instrument declared on, and neither denies the breach nor the alleged consequences. A special plea, putting in issue the contract which lies at the foundation of this action, would, therefore, not be an immaterial plea.

3. As a general rule, a party shall not be permitted to derive benefit from his own error. If there is fault, it is the defendant's fault, and, at this stage of the case, it would be in violation of this principle to allow him to assign it for error.

4. Defendant has not assigned this defect for error, — he has not asked for a reversal on this ground.

5. If the error is fatal, it should have been brought before this court in another form. The Circuit Court should have been moved for a repleader ; had they refused, such refusal is assignable for error. No such application was made, and consequently there is no error cognizable by the Supreme Court.

6. Had the Circuit Court refused to award a repleader, and such judgment been reversed as erroneous, the judgment of the Supreme Court would have remanded the cause, with its mandate directing such repleader. But can a court of errors in any other way award a repleader ? Gould on Pleading, 518, § 47.

7. If the Circuit Court might lawfully have refused to award a repleader, then there is no error.

Gould on Pl. 509, § 32. A repleader for the immateriality of the issue is never awarded, it seems, for that party who tendered the issue. Cites Dougl. 749, *per* Buller. There can be no ground for a repleader, for the plea is substantially bad ; there is

no fact alleged in it which it could serve any purpose to deny, or to go to issue upon.

1 Ld. Raym. 170. It was argued, that if the verdict passes against him who made the first fault in pleading, no repleader shall be granted, but it is otherwise if it passes for him. The court refused to award a repleader, for the issue was not wholly immaterial, and after verdict court will intend that the matter put in issue was material.

1 H. Bl. 644. In assumpsit, declaration had five counts. Defendant pleaded *nil debet* to the first, and left the others unanswered. Judgment for plaintiff. Court held the defect cured by the verdict, and defendant should not take advantage of his own mispleading to defeat plaintiff's suit, when jury had found he owed the debt.

Cowp. 510. Court will not grant a repleader but where complete justice may be answered.

Gould, 510, § 32. Therefore, if verdict is against him who tendered the issue, judgment must also regularly go against him. For, as the fault in the issue commenced on his part, his traverse being bad in law, and it being moreover found to be false in fact, it is deemed unreasonable to grant him the indulgence of a repleader. Yet if the verdict were for the same party, a repleader would regularly be awarded. §§ 33 – 36.

Ibid. § 37. Courts ought never to award a repleader, or arrest the judgment for faults in the issue, when it is apparent that no useful end can be attained in so doing. Citing 1 Str. 198, where Powys, J., said, — " I am of the same opinion, for if we should grant a repleader, I do not see how we can have any new light in the case."

Gould, §§ 38, 45. Judgment ought never to be given for, or arrested in behalf of, that party in whose pleading the first substantial defect is found. Ibid. § 49.

After verdict for the plaintiff, the defendant shall not take advantage of his own mispleading. Harvey *v.* Richards, 1 H. Black. 644.

The plea. of " not guilty " in assumpsit is cured by verdict. The error assigned was, that issue was joined on the plea of not guilty. Verdict cured that. 8 Serg. & Rawle, 441 ; 2 Stra. 1022.

A right defectively alleged is cured by verdict. 6 Verm. Rep. 496 ; 2 Marshall, 254.

A defective statement in the declaration for want of date of the assumpsit, also failure to state the consideration, is cured by verdict. 1 Watts, 428 ; 1 Day, 186, note.

After verdict in an action by an administrator, a defective allegation in the declaration of the promise to the administrator and the death of the intestate, and an omission to make profert of the letters of administration, cannot be taken advantage of,

though they might have furnished good causes of demurrer. 1 Harris & Gill, 14.

It was held, that in an action of assumpsit and not guilty pleaded, and issue, the judgment may be entered, for it is only mispleading, and the real merits may as well be tried on that issue as on any other. 4 Bac. Abr. 84.

The omission to join in issue to some of the replications is healed after verdict. 3 Harris & Johns. 109.

Departure is cured by verdict. Connect. Rep. 252.

Mr. Justice WOODBURY delivered the opinion of the court.

In the examination of this case, a defect has been discovered in the pleadings and verdict, which was not noticed in the court below, nor suggested by the counsel here.

And the first question is, whether, under these circumstances, it can be considered by us ; and if it can be, and is a material defect, not cured or otherwise capable of being overcome, whether it ought to be made a ground for reversing the judgment, and sending the case back for amendment and further proceedings.

There can be no doubt, that exceptions to the opinions given by courts below must all be taken at the time the opinions are pronounced.

But it is equally clear, that when the whole record is before the court above, as in this case, any exception appearing on it can be taken by counsel which could have been taken below. Roach *v.* Hulings, 16 Peters, 319.

So it is the duty of the court to give judgment on the whole record, and not merely on the points started by counsel. Slacum *v.* Pomeroy, 6 Cranch, 221 ; Baird & Co. *v.* Mattox, 1 Call, 257 ; 16 Peters, 319.

In United States *v.* Burnham, 1 Mason, 62, the court alone took notice of the defect, which was the sole ground of its opinion.

In Patterson *v.* United States, 2 Wheat. 222, it is stated, that " the points made were not considered by the court, and judgment was pronounced on other grounds," and Justice Washington says (p. 24), — " The court considers it to be unnecessary to decide the questions which were argued at the bar, as the verdict is so defective that no judgment can be rendered upon it " ; and on that account the proceedings below were reversed. See also Harrison et al. *v.* Nixon, 9 Peters, 483, 535.

I proceed, then, to consider the nature and character of the difficulty in this case, appearing on the record.

Since discovering it, an opportunity has been given to the counsel for the original plaintiff, which has been improved, to attempt to remove it by argument and authorities. But it still remains, and consists in this.

The declaration is an action on the case, sounding in tort. It

sets out no contract except one by way of inducement, made by Mr. Franklin, the predecessor in office of the defendant, and it then proceeds to make the gist of its complaint a wrongful and injurious neglect and refusal by the defendant to furnish a copy of certain laws to the plaintiff, as had been agreed by Franklin. We are required to take this view of the declaration, not only by the averments in it, but by both the present and past positions of the counsel for the plaintiff, that it was intended to be founded on a misfeasance. The plea, however, instead of being " not guilty," as was proper in such case (Com. Dig. *Pleader*), is *non assumpsit*, and the plaintiff below, not demurring thereto, nor moving for judgment notwithstanding such a plea, joined issue upon it, and the verdict of the jury conforms to the plea and issue, and merely finds, " that the defendant did assume upon himself in manner and form," &c., and assesses damages, " sustained by reason of the nonperformance of the *promise* and assumption aforesaid."

Beside the general reasoning in the books, that pleas amounting to the general issue should traverse the material averments in the declaration, and, where the action is one on the case for a tort, should deny the tort by pleading "not guilty," it is laid down in most elementary treatises that " not guilty " is the proper general issue in such cases. See Com. Dig. *Pleader.*

Beyond this, it has been actually adjudged in an action on the case, after full hearing, that *non assumpsit* was a bad plea. Noble *v.* Lancaster, Barnes, 125.

That action was trover, but being still an action on the case, the same principle applied.

Nor is the difference merely formal or technical between actions founded in tort and in contract. 1 Chit. Plead, 418, 229.

Because, when in tort or *ex delictu*, a set-off is not admissible, nor can infancy be pleaded as to one *ex contractu*, nor can a plea in abatement be sustained, that all concerned in the wrong are not joined, as it may be in counts on contracts, and a writ of inquiry must issue to ascertain the damages, which is often unnecessary in suits on contracts. A declaration is bad which unites a count in tort with one in contract. 2 Chit. 229, 230 ; 1 Chitty's Rep. 625, note; 4 D. & E. 794 ; 8 D. & E. 33.

Various other cases analogous to this might be cited, which tend to show that the present plea is improper, but it is not deemed necessary, in this stage of the inquiry, to enlarge on that point ; and I proceed to the next and more difficult question, whether such a plea, though bad on demurrer, should not be considered as good after verdict, and cured by the statute of jeofails.

As a general rule, all informality in a good plea is held to be cured by a verdict, and ought to be, in order not to delay, through a defect of mere form, what may seem to be just. 1 Levinz, 32 ; 6 Mod. 1 ; Com. Dig. *Pleader*, R. 18 ; 6 Johns. R. 1.

Here, however, there appears to be no informality in a good plea ; on the contrary, it looks more like formality in a bad one. And if it be asked, whether there are no cases of bad pleas which are cured by a verdict, we answer, that several exist, but that they are cases where the pleas, though bad on demurrer, because wrong in form, yet still contain enough of substance to put in issue the material parts of the declaration.   That is the test.

In the opinion of a majority of the court, the plea under consideration does not contain enough for that purpose ; and my apology for examining this point somewhat more in detail must be found in the circumstance, that the court are divided upon it.

The provision by Congress in relation to amendments is to be found in the 32d section of the Judiciary Act of September 24th, 1789, and is similar to that in the 32 Henry 8th, but certainly not broader.   See the former, in 1 Lit. & Brown's ed. 91, and the latter in 1 Bac. Abr. *Amendment and Jeofail;* B.

Under both of these statutes, it has frequently been adjudged, that defects in substance are not cured by a verdict ; "for this," says Bacon (Abr., before quoted, E), "would have ruined all proceedings in the courts of justice " ; and a defect in substance, in a plea or verdict, is conceded, in all the books, to exist when they do not cover " whatever is essential to the gist of the action."

The present plea, if tried by this test, seems not to be remedied by the verdict, because, so far from traversing all that is essential, nothing is denied, unless it be the inducement.   Thus it traverses a promise simply ; but the only promise set out in the declaration is one introductory to those material averments, which, as before stated, are the wrongful and injurious acts of the defendant.   So far from denying those acts, the plea entirely passes them by, and they are neither put in issue, nor a verdict returned upon them one way or the other.   It is true, that, in some actions for a tort, a promise may be referred to in the declaration, which sometimes will constitute one material fact among several others.   But it is only one, and not the whole, nor is it the most material fact ; that being, in such cases, the misfeasance of the defendant.   Nor does the verdict here find this one fact or promise such as averred in the inducement.   There it is stated to be made by Mr. Franklin ; but, on the contrary, the verdict finds a promise made by the defendant.

On recurring to precedents, several are found which confirm these conclusions.   In respect to pleas they show that, when so imperfect and immaterial as this, they are not cured by verdict. And the reason generally assigned, and which pervades the whole, is that before mentioned, namely, that they do not cover or traverse all the gravamen of the declaration.   Staple *v.* Heyden, 6 Mod. 10; Willes, 532 ; Tidd's Prac. 827 ; Gilb. C. P. 146.

Hence it has been decided that a plea of *non* assumpsit to an

action of debt is not thus cured (Brennan v. Egan, 4 Taunt. 164 ; Penfold v. Hawkins, 2 Maule & Selw. 606), because it covers too little or is irrelevant.    While, in pursuance of the same rule, it has been held that *nil debet* to assumpsit (1 Hen. Bl. 664) and " not guilty " either to assumpsit (Cro. El. 470, and 8 Serg. & Rawle, 441), or to covenant (1 Hen. & Munf. 153), or to debt for a penalty (Coppin v. Carter, 1 D. & E. 462, note), are cured by a verdict, because they contain enough to put in issue all which is important in the declaration.

In the present case, the issue manifestly reaches only a part of the case, and is therefore incurable (Hardres, 331) ; and it comes expressly within the definition of an immaterial issue, which is also incurable.    Carth. 371; Bac. Abr. *Verdict*, K ; 2 Levinz, 12 ; 2 Saund. 319 ; 2 Mod. 137 ; Gould's Pl. 506, 509.

This is undoubted, from Williams's definition in Bennet v. Holbech, 2 Saunders, 319, *a.*    He says, — " An immaterial issue is where a material allegation in the pleadings is not answered, but an issue is taken on some point which will not determine the merits of the case, and the court is often at a loss for which of the parties to give judgment."

So in Benden v. Manning, 2 N. H. R. 291, it is laid down, on circumstances like the present, that " if, instead of assumpsit, a special action on the case had been brought for misfeasance, it is very clear, that no consideration need have been alleged or proved. The gist of such an action would have been the misfeasance, and it would have been wholly immaterial whether the contract was a valid one or not." 5 D. & E. 143 ; 2 Wils. 359 ; 1 Saund. 312, note 2.

If we should next compare this plea and issue in their substance with a few others less general, that have been solemnly adjudged to be bad, and not cured by verdict, though found for the plaintiff, the result will be the same.

It may be seen in Tryon v. Carter, 2 Strange, 994, that, in debt on bond, payable on or before the 5th of December, the defendant pleaded payment on the 5th of December, and issue being joined and found against him, the court still awarded a repleader, as it could not be inferred from these pleadings that payment may not have been made before the 5th.

See another in Enys v. Mohun, 2 Strange, 847, where to covenant on a lease to C., averred to come by assignment to the defendant, the plea was that C. did not assign to him, and verdict was for plaintiff. But the court awarded a repleader, as the issue found does not cover all the important parts of the declaration ; namely, that the lease may have come to the defendant not from C. direct, but by mesne assignments.    Same case, in 1 Barnardiston, 182, 220.    See also other cases.    Yelv. 154; Peck v. Hill, 2 Mod. 137; Read v. Dawson, ibid. 139 ; Stafford v. Mayor of Albany, 6 Johns. 1; Com. Dig.

*Pleader*, R. 1 and 2, V. 5; 1 Chit. Pl. 625, 695; 6 D. & E. 462; 1 Saund. 319, n.

In Patterson v. United States, 2 Wheat. 224, Judge Washington lays down the whole law precisely as we view it, in respect to a verdict varying materially from the issue, and which principle applies equally well to a plea varying from the substance of the declaration. He says, — "Whether the jury find a general or a special verdict, it is their duty to decide the very point in issue, and although the court in which it is tried may give form to a general finding, so as to make it harmonize with the issue, yet if it appear to that court or to the appellate court that the finding is different from the issue, or is confined only to a part of the matter in issue, no judgment can be rendered on the verdict." And on error the proceedings below were reversed.

After all this, it is hardly necessary to state further, by way of precedent, that in Noble v. Lancaster, Barnes's Notes, 125, before cited, this very point was decided. *Non assumpsit* was pleaded to an action on the case (e. g. trover), and was held not to be cured by a verdict, but was bad in arrest of judgment.

Looking, then, to many precedents, as well as correct principles in pleading, the issue presented and tried here is not only an improper one for the case; but, not containing enough to cover all that is material in the declaration, and being thus imperfect in substance, it "does not determine the right between the parties," and is not cured by the verdict or the statute of jeofails.

A moment as to the defects in the verdict. It is difficult to see how an immaterial and bad plea can be cured by a verdict, which, as in this case, is quite as immaterial as the plea. Indeed, in some respects, the verdict here, compared with the declaration, is more defective and irremediable than the plea.

It is laid down in Comyns's Dig. *Pleader*, S. 24, that a verdict is even void if it be "variant from the declaration," and he gives as one illustration from 2 Roll. 703, l. 35, "in assumpsit, if it finds a different promise."

In the present case, the promise is found not only different from that laid in the declaration as inducement, but the verdict varies in other essential respects from the declaration, finding nothing of any of the misfeasance charged in it on the defendant.

The defect here, then, is in the verdict as well as plea, and though a mere informality in the former is cured by the act of Congress as to amendments (16 Peters, 319), yet the defect here is similar in both, and as just shown, being on principle in both a defect in substance no less than form, is uncured. (Stearns v. Barrett, 1 Mason's R. 170, and 2 Mason's R. 31.)

But several arguments have been offered against a reversal of the judgment and further proceedings, and in favor of rendering judgment for the plaintiff, on this record, though the plea, issue, and

verdict are all defective in substance, and do not show which party is entitled to recover, on the real merits in dispute, or that they have been legally tried.

These arguments it is our duty to examine. One is, that the whole merits, according to the evidence reported, may have actually been considered and passed upon in the court below under this plea and issue. But it is a sufficient answer to this, that if so done it was illegally done, no evidence being competent under that issue except the promise described in it, and no opinion of the jury or the court being regular or proper under it, except as to that promise alone. Harrison et al. *v.* Nixon, 9 Peters, 484.

There are many cases showing that the evidence must be limited to the plea. Mar. Ins. Company *v.* Hodgson, 6 Cranch, 206 ; 4 Wheat. 64, in case of the Divina Pastora. The court say you must "not admit the introduction of evidence varying from the facts alleged." 9 Peters, 484. The *probata* should conform to the *allegata.* Boone *v.* Chiles, 10 Peters, 177.

In Barnes *v.* Williams, 11 Wheat. 416, it is said, — " Upon inspecting the record, it had been discovered that the special verdict found in the case was too imperfect to enable the court to render judgment upon it." A certain fact was important to the recovery. "Although in the opinion of the court there was sufficient evidence in the special verdict from which the jury might have found the fact, yet they have not found it, and the court could not upon a special verdict *intend* it."

These illustrations and cases tend to show the difficulties in forming an opinion on any thing not found or apparent on the record ; and the impropriety of conjecturing and pronouncing on the real merits, when both the issue and verdict are defective in substance in relation to them. But, in this case, if the promise averred to have been made by Franklin was treated at the trial as one made by Garland, so far as regarded its operation and his duty, — which has been the argument of the original plaintiff's counsel before us, and which may, for aught we now decide, be corrrect, — then we should be called upon to render judgment against Garland merely on such promise and a breach of it.

That is every thing which the verdict finds or the issue presents, in the most favorable view.

But that being a promise confessedly on the whole evidence made by the original defendant, or his predecessor, *as a public agent,* if now rendering final judgment, we should probably, in that view of the record (no tort having been put in issue or found by the verdict), be obliged to decide against the original plaintiff on the merits, because public agents are not usually liable on mere contracts or promises made in behalf of their principals. (See on this Hodgson *v.* Dexter, 1 Cranch, 345 ; Macbeath *v.* Haldimand, 1 D. & E. 172 ; Fox *v.* Drake et al., 8 Cowen,

Garland *v.* Davis.

191 ; 2 Dall. 444 ; Osborne *v.* Kerr, 12 Wend. 179 ; Story on Agency, §§ 302 – 308 ; Lord Palmerston's case, 3 Brod. & Bing. 275 ; Freeman *v.* Otis, 9 Mass. R. 272, quære in part.)

On the contrary, however, if the action is to be considered as brought, not on any promise except as inducement, but on a wrongful act or misfeasance, as the plaintiff sets out his case in his declaration and still contends to be the truth, then it seems manifest that — nothing on that misfeasance, the essential point of the action, having been either traversed in the plea or found by the verdict — there is nothing upon which judgment can legally be rendered for either party on the merits. It will be seen that we come to this conclusion, not because cases are wanting which hold that officers not judicial, nor having any discretion to exercise on a subject (Wheeler *v.* Patterson, 1 New Hamp. R. 88 ; Kendall *v.* Stokes, 3 Howard, 98 ; 11 Johns. 114 ; 2 Ld. Raym. 938), are liable in tort for misfeasances, whenever they are violations of public laws or official duties (Shepherd *v.* Lincoln, 17 Wendell, 250 ; 5 Burr. 2709 ; 6 D. & E. 445 ; Gidley, Ex. of Holland *v.* Lord Palmerston, 7 J. B. Moore, 91 ; 15 East, 384 ; 9 Clark & Fin. 251 ; 1 Bos. & Pul. 229 ; Little et al. *v.* Barreme et al., 2 Cranch, 170 ; 13 Johns. 141 ; Tracy et al. *v.* Swartwout, 10 Peters, 95), though others consist of unsuccessful attempts to charge persons in tort for matters which originated and existed in fact only as contracts (Bristow et al. *v.* Eastman, 1 Esp. N. P. Rep. 172 ; Jennings *v.* Rundall, 8 D. & E. 335), or which were mere nonfeasances (20 Johns. 379 ; 12 Mod. 488 ; 1 Ld. Raym. 466 ; 4 Maule & Selw. 27 ; Story on Agency, § 308); but because the issue and verdict present nothing in relation to any such misfeasance, and our opinion is intended to be confined to the questions on the pleadings, without any decision upon the merits. Indeed, it would be difficult to express one on them where we have been unable to agree on one, and where a majority of the court think the pleadings are not in a proper state to enable us to give one satisfactorily.

In this state of things, the most obvious course to assist us to "reach the law and justice of the case" would be to reverse the judgment below and award a repleader. This would not deprive either party of any merits they may have, and may be able hereafter to show on proper pleadings, and costs would indemnify the party who has been delayed by any bad pleading, so far as he ought to be indemnified considering his own fault in this case, in joining and trying an issue immaterial or radically insufficient to settle the cause of action, rather than demurring to the plea seasonably. But such a course is objected to on certain grounds not yet considered, and which it is our duty to notice. One of them is, that when a plea or verdict is radically defective, judgment ought to be rendered, notwithstanding the verdict, for the party

M *

whose pleadings are right ; and another, a branch of this, is, that a court ought in no case to permit the party who commits the first error to have the judgment reversed and be allowed a repleader, unless, perhaps, when the verdict is in his favor.

Though several of the text-books lay down rules like these in broad terms, it is first to be noticed that some state them with a quære or doubt. (1 Chit. Pl. note, 522, 633, and Com. Dig. *Pleader.*) In others, the cited authorities do not support them, as Gilbert, quoted in Tidd, 828. In others, the counsel, rather than the court, recognize them. Kempe *v.* Crews, 1 Ld. Raym. 170 ; Taylor *v.* Whitehead, Doug. 749. In others, the court refer to them, but do not appear to have founded their decision on them, as Webster *v.* Bannister, Doug. 396, where the issue covered the merits (3 Hen. & Munf. 388), and in others, matters still different existed, which justified the judgment given, independent of these rules.

Thus, if a plea be bad, but still confesses the cause of action without setting out a sufficient avoidance, judgment can with propriety be rendered for the plaintiff on such confession, if the declaration be good. Rex *v.* Philips, 1 Str. 397 ; Jones *v.* Bodingham, 1 Salk. 173 ; Gould on Pl. 509 ; Simonton *v.* Winter et al., 5 Peters, 141 ; Kirtley *v.* Deck, 3 Hen. & Munf. 388 ; 6 Mod. 10 ; Tidd, 827.

So, if the plea be a mere nullity, — putting nothing material in issue, — judgment is at times allowed to be signed as for want of a plea, as if *nil dicit,* provided the declaration be good. 4 Taunt. 164 ; 2 Maule & Selw. 606.

So, if the plea be evidently a sham plea, or fictitious, a like course is warranted. 10 East, 237 ; Tidd, 831.

Or if the plea, though neither of these, still be defective, but sets out such facts as demonstrate that the party has no merits, and that no amendment could be made which would avail him any thing, or, in other words, nothing is left in the case that can be mended. Gould on Pl. 514, § 39 ; Tidd, 831 ; Henderson *v.* Foote, 3 Call, 248.

It is incidental circumstances like these, affecting the merits and not adverted to always in decisions or elementary treatises, which have governed most of the opposing cases, rather than a mere technical, and in some degree arbitrary rule, without reference to the merits, and which would bar a party claiming to possess them from having them tried on a repleader or amendment, on complying with equitable terms.

In the case now under consideration, the plea comes under neither of these categories, neither confessing a cause of action, nor appearing to be a sham or fictitious plea, nor disclosing enough to show the defendant to be without any good defence. On the contrary, a defence appears, which the original defendant seems always

to have urged with great confidence as being good. Under these circumstances, then, repleading or something equivalent would seem proper to do justice between the parties, and to carry out the principle of the statutes of jeofails, so as not to prevent a judgment on the merits, because some " *slip*," as Lord Mansfield calls it, has happened on the part of the defendant in his plea. Rex *v.* Philips, 1 Burr. 295 ; Tidd, 828 ; Gould on Pl. 508, §§ 31, 40. If the right be not put in issue and may be, a ruling to permit it seems reasonable. Staple *v.* Heyden, 6 Mod. 2.

The true meaning of these technical rules can be made rational and consistent, if they are held to apply to cases where good grounds are apparent for rendering final judgment. Then it may well be rendered against him who committed the first material fault in the pleadings; and which fault has not afterwards in any way been cured.

But if no such grounds appear, in consequence of the imperfections of the pleas and verdict, final judgment cannot properly be rendered ; and the rules are inapplicable ; and the judgment below should be reversed, so as to furnish an opportunity to remove those imperfections and reach the justice of the case by amendments or repleaders. And so far from the party not being permitted to enjoy this indulgence who committed the first fault, he is the only one who needs it, and in whose behalf, under the liberal spirit of modern times, all statutes of jeofails are passed. Nor can the opposite party suffer by this course in respect to the merits, as they are left open. Or in respect to cost and delay, as he should be indemnified for them, in the manner before mentioned, by equitable terms, for allowing any amendments.

In this view of the subject, it is of no consequence for which party the defective verdict was found, except at times the fact in it may be an indication of merits in that party who has the *postea*, so far as that fact can affect the merits. But in this case the fact found was immaterial in relation to the merits, as already shown ; and the object now is, to prevent such immaterialities from making a final disposal of the case, — to prevent substance from being sacrificed to form, — and where merits may exist, to adopt such a course as will present them to the court intelligibly, for a final adjudication of the real justice of the case.

To all this, in an advanced era of jurisprudence, it will hardly do to repeat from some of the old books, that a party is for ever to be barred either for *the badness or the falsity* of his plea, if it happens to be imperfect and is found against him, though he has not confessed the declaration, nor stated any facts in his plea inconsistent with merits.

Much more, too, is it proper, if not indispensable, in a case like this, so defective on the record as not to justify any decision about the merits, to adopt a course which shall not bar the due consid-

eration of them in the end, and which shall be for the benefit and guide of the court even more than a party, so as to prevent a leap in the dark, and which for these and other reasons shall let the cause be reopened, and prepared and tried in a manner to bring the whole of the merits legally before both the court and the jury. Cro. Eliz. 245 ; 5 Hen. & Munf. 393 ; Baird & Co. *v.* Mattox, 1 Call, 257.

Considering the character and position of this tribunal, as one of the last resort in administering justice, and considering the increased disposition of the age in which we live to eviscerate the truth, and decide ultimately only on the real merits in controversy between parties, or in the words of Justice Story (1 Story, 152, in Bottomly and the United States), as to " technical niceties," considering " the days for such subtilties in a great measure passed away," it seems a duty of our own motion to give all reasonable facility to get the record in an intelligible and proper shape before we render final judgment.

As proof that such a course is sometimes deemed proper, to aid a court as well as a party, notwithstanding the technical rules before mentioned, it is stated in Gould on Pl. 507, § 28, that judgment may be arrested after verdict, " if the issue is immaterial, so that the court cannot discover, from the finding upon it, for which party judgment ought to be given." §§ 23 and 22.

So, though Gould lays down these rules before named, he says (page 514, § 40), if a special plea show there may be a good justification, though it has been badly pleaded, judgment must be arrested, and a repleader awarded, as it appears a good issue might be formed ; and when this is the case, " the ends of justice require that an opportunity for forming such an issue should be afforded.". And in respect to objections in such cases to indulgence to a party whose plea is bad, Gould, 508, says in a note :— " The true answer to this inquiry appears to be, that the awarding a repleader in such case was originally rather an act of indulgence to a party, who tendered an improper issue, than a matter of strict right. An indulgence grounded on the presumption that the issue was misjoined through the inadvertence and oversight of he pleaders, and that a farther opportunity to plead would probably result in a material issue decisive of the merits of the cause," &c.

There are also some very high precedents against the application of these technical rules in cases and circumstances like those now under consideration. Such was the case of Rex. *v.* Philips, 1 Burr. 302. The reasoning of Lord Mansfield on this whole subject is directly in point, as well as the case itself, and contains that beautiful correction by him of a much abused maxim, in which he says it is the duty of a good judge to amplify justice rather than his jurisdiction, " *boni judicis est ampliare justitiam, not jurisdictionem.*" There, after verdict for the plaintiff, he allowed an amendment of

the plea on payment of costs, being satisfied that "*the ends of justice require that an opportunity for forming a proper issue be allowed.*"

There are many other cases, some ancient and some modern, which fully support the same conclusion. See Enys *v.* Mohun, 2 Strange, 847, and S. C., Barnardiston, 182, 220 ; Tryon *v.* Carter, 2 Strange, 994 ; Love *v.* Wotton, Cro. Eliz. 245.

In Serjeant *v.* Fairfax, 1 Levinz, 32, the plea was defective as not taking issue on enough, though it denied part of what was material in the declaration. Verdict was found for the plaintiff, This is in substance the very case now under consideration. Counsel contended, — "When the issue is found against the pleader, judgment shall be for the plaintiff ; but if for him (the pleader), not. But Justice Twysden said, that if an *improper* issue is taken, and verdict given thereon, judgment shall be given thereupon, be it for the plaintiff or defendant. 2 Cro. 575. But an immaterial issue is where, upon the verdict, the court cannot know for whom to give judgment, whether for the plaintiff or for the defendant, as in Hob. 175; and with him the chief justice and Wyndham wholly agreed, and awarded a repleader."

In Simonton *v.* Winter et al., 5 Peters, 141, the verdict was for the plaintiff, and yet, the plea being bad, the court reversed the judgment, as the cause of action was not confessed in the plea, and remanded the case with an order for a *venire de novo.*

See also in point Green *v.* Baily, 5 Munford, 246, and Baird & Co. *v.* Mattox, 1 Call, 257.

And in 9 Wheaton, 729, the pleadings are not given, but Justice Story said there was great *irregularity and laxity* in them, and " it is impossible, without breaking down the best settled principles of law, not to perceive that the very errors in the pleadings are of themselves sufficient to justify a reversal of the judgment and an award of a repleader," and without " appropriate pleas," " it would be difficult to ascertain what was to be tried or not tried."

See also Harrison et al. *v.* Nixon, 9 Peters, 483.

All that remains is to consider the best form of carrying these conclusions into effect.

In some of the cases before cited, the court have not only reversed the judgment, but ordered a repleader. But in others, it is said that this cannot be done after a writ of error. 6 Mod. 102 ; 2 Keb. 769 ; Com. Dig. *Pleader* and *Verdict.*

Such, probably, has always been the practice in relation to not ordering it by the court below, after a writ of error is sued out, till the case is again reopened ; but it was once not the practice in the higher courts of error in England. See 2 Saund. 319 ; Holbech *v.* Bennett, 2 Levinz, 12.

Nor is it the practice now in some of the higher courts in this country. In Green *v.* Baily, 5 Munford, 251, judgment was re-

versed on the writ of error, the pleadings set aside after the plea, and a repleader awarded.

The 32d section of the Judiciary Act, before referred to, expressly empowers " any court of the United States " " at any time to permit either of the parties to amend any defect in the process or pleadings."  Lit. & Brown's ed. 91.

All know that a repleader is little more in substance than permitting an amendment.

But most of the precedents, in this court allowing amendments after a writ of error are in maritime or admiralty proceedings, and I have found none of those in the form of repleaders.  In 4 Wheat. 64 (though one in admiralty, where less strictness prevails in pleading than at common law), Chief-Justice Marshall said,—" The pleadings in this case are too informal and defective to pronounce a final decree on the merits " ; and the judgment was therefore reversed, and the cause remanded, with directions to permit the pleadings to be amended.

See also a like order in the Divina Pastora, 4 Wheat. 63, and in case of the Edward, 1 Wheat. 264, and case of the Samuel, 1 Wheat. 13 ; Harrison et al. v. Nixon, 9 Peters, 483.

In cases at common law, the form is usually somewhat different. In 5 Peters, 141, the form was suited to the case, and judgment not only reversed, but a *venire de novo* ordered, and in United States v. Hawkins, 10 Peters, 125, Justice Wayne says,—" A *venire de novo* is frequently awarded in a court of error, upon a bill of exceptions to enable parties to amend,"— and " amendments may, in the sound discretion of the court, upon a new trial, be permitted."

See further, 2 Wheat. 226 ; Barnes v. Williams, 11 Wheat. 416 ; Bellows v. Hallowell & Augusta Bank, 2 Mason, 31 ; Peterson v. United States, 2 Wash. C. C. 36.

See the form in England.  Parker v. Wells, 1 D. & E. 783, and Grant v. Astle, Doug. 922.

In Pollard v. Dwight, 4 Cranch, 432, the court said, let judgment " be reversed and the cause remanded for a new trial."

Mr. Lee prayed " with leave for the defendants below to amend their pleadings."

The court said " that the court below had the power to grant leave to amend, and this court could not doubt but it would do what was right in that respect."  Similar to this was the course in Day v. Chism, 10 Wheat. 404.

And in United States v. Kirkpatrick, 9 Wheat. 738, the court not only reversed the judgment, and awarded a *venire de novo*, but gave " directions also to allow the parties liberty to amend their pleadings."  So 9 Wheat. 540.

See on this further, Mar. Ins. Co. v. Hodgson, 6 Cranch, 218 ; 7 ibid. 47, 497 ; 9 ibid. 244 ; 1 ibid. 261, 13 ; 10 ibid. 449 ; 4 ibid. 52 ; 16 Peters, 319 ; Moody v. Keener, 9 Porter, 252.

In conclusion, then, as by several cases in England the allowance of a repleader in courts of error seems to have gone into disuse in modern times, and as the practice in common law cases in this tribunal, though otherwise in some of the States, has usually been, not to direct either amendments or repleaders in cases like these, but to reverse the judgment and remand the cause to the court below for further proceedings there, we shall conform to that practice in the present instance.

Let the judgment below be reversed, and the case remanded for further proceedings.