JAMES. ROACH, ADMINISTRATOR OF PHILIP ROACH, PLAINTIFF
IN ERROR, *v.* DAVID W. HULINGS, DEFENDANT IN ERROR.

The jury, in rendering their verdict, failed to respond separately to the distinct issues
they were sworn to try. The defendant had pleaded three pleas: 1. Covenants
performed. 2. Payment. 3. Set-off, greater in amount than the claim of the plain-
tiff. On these three pleas the jury gave a general verdict of damages in favour of the
plaintiff, on which judgment was entered. In the Circuit Court, no exception was
taken to the verdict. The counsel for the plaintiff contended that this was error in
the Circuit Court, which was properly to be corrected in the Supreme Court. By
the Court. Objections of this character, that are neither taken at the usual stage of the
proceedings, nor prominently presented on the face of the record, but which may be
sprung upon a party after an apparent waiver of them by his adversary, and still
more after a trial on the merits, can have no claim to the favour of the Court; but
should be entertained in obedience only to the strict requirements of the law. The
three issues were joined on affirmative allegations by the defendant, and the verdict
was for the plaintiff on these issues. Admitting that this verdict is not affirmatively
responsive to these issues, it virtually answers and negatives them all; for if all or
either of them had been untrue, the verdict was untrue. Should the judgment, then,
be arrested, this would be done neither from a necessity to guard the merits of the
controversy, nor from the principles of sound inductive reasoning; but solely in
obedience to an artificial and technical rule, which, however it may be founded in
wisdom and promotive of good in general, yet, like all other rules, is capable of pro-
ducing evil when made to operate beyond the objects of its creation.

The third section of the act of Congress of 1789 to establish the judicial Courts of the
United States, which provides that no summary writ, return of process, judgment,
or other proceedings in civil cases in the Courts of the United States, shall be
abated, arrested, or quashed for any defect or want of form, &c., although it does
not include verdicts, eo nomine, but judgments are; and the language of the provi-
sion, "writ, declaration, judgment, or other proceedings in civil causes;" and further,
"such writ, declaration, pleading, process, judgment, or other proceeding whatso-
ever," is sufficiently comprehensive to embrace every conceivable step to be taken
in a cause, from the emanation of the writ down to the judgment. Both the verdict
and the judgment in this case are within the terms and intent of the statute, and
ought to be protected thereby.

In trials at law, while it is invariably true that decisions on the weight of the evidence
belongs exclusively to the jury, it is equally true that whenever instructions upon
evidence are asked from the Court to the jury, it is the right and duty of the former
to judge of the relevancy, and, by necessary implication to some extent, upon the
certainty and definiteness of the evidence proposed. Irrelevant, impertinent, or imma-
terial statements, a Court cannot be called upon to admit as the groundwork of in-
structions; it is bound to take care that the evidence on which it shall be called upon
to act is legal, and that it conduces to the issue on behalf of either the plaintiff or the
defendant.

IN error to the Circuit Court of the United States, for the county of Washington, in the district of Columbia.

The defendant in error instituted an action of covenant, in the Circuit Court of the county of Washington, against Philip Roach, upon certain articles of covenant. Before the trial of the cause, the defendant died, and his administrator became the defendant in the suit, a verdict and judgment were rendered for the plaintiff, and the defendant prosecuted this writ of error.

The case is fully stated in the opinion of the Court. It was argued by Mr. Brent, the younger, for the plaintiff in error, and by Mr. Bradley, for the defendant.

Mr. Justice DANIELS delivered the opinion of the Court.

This case comes up on a writ of error to the Circuit Court of Washington county, in the district of Columbia. It appears from the record, that Philip Roach, the plaintiff's intestate, having contracted by agreement in writing on the 3d day of April, 1829, with one Samuel Davidson, for the workmanship to be performed in the construction of a lock described as the outlet lock at a place called Lewistown, did, on the 27th of April, in the same year, enter into a covenant with Hulings, the defendant in error, in which it was agreed that the defendant should supply all the timber, plank, and boards, required in building this lock, at prices stipulated in the said covenant, to be paid by the plaintiff's intestate. On the 13th of March, 1837, an action of covenant was instituted by Hulings in the Circuit Court of Washington county against Philip Roach, to recover the value of the timber, plank, &c., alleged to have been furnished by the former, in performance of the contract. The covenant is by profert made a part of the record. An account, exhibit (B), is filed, showing the amount and value of the materials for which compensation is claimed; also the deposition of a witness, Samuel Davidson, to prove the justice of this account. Philip Roach having died after appearance to the suit, process was directed against his representative; and the defendant having subsequently appeared as administrator of the deceased, filed 1st, the pleas of covenants performed, and payment by his intestate; and next the plea of set-off of an

[Roach *v.* Hulings.]

alleged debt of three thousand dollars due to the intestate in his lifetime, and greater in amount than the damages claimed by the plaintiff. On these three pleas, issues were joined; and the jury rendered a general verdict in damages for the plaintiff. The questions of law decided by the Court below, and now presented for review here, arise upon two bills of exception sealed by the Judges of the Circuit Court, and made parts of the record. But before going into an examination of these questions, it is proper to advert to a point which was neither suggested nor decided in the Circuit Court, but which has been urged for the first time by the counsel for the plaintiff in error before this Court. The point thus raised and pressed by counsel is the following: that the jury, in rendering their verdict, failed to respond separately to the distinct issues they were sworn to try; and that this failure by the jury constitutes an error for which the judgment of the Circuit Court should be arrested. Objections of this character, that are neither taken at the usual stage of the proceedings, nor prominently presented upon the face of the record, but which may be sprung upon a party after an apparent waiver of them by his adversary, and still more after a trial upon the merits, can have no claim to the favour of the Court; but should be entertained in obedience only to the strictest requirements of the law. Let us see ho ⁀ far in the present instance the Court is controlled by any such absolute and inflexible authority. The three issues were joined upon affirmative allegations by the defendant: 1st, That his intestate had performed his covenant: 2d, That he had paid whatever was due the plaintiff: and 3d, That the defendant possessed in right of his intestate a claim against the plaintiff, greater in amount than the plaintiff's demand against him. Upon these affirmative averments, the jury find a verdict for the plaintiff. Admitting that this verdict is not technically responsive to the several pleas, it virtually answers and negatives them all; for if all or either of the pleas had been true, the verdict was untrue. Should the judgment then be arrested, this would be done neither from a necessity to guard the merits of the controversy, no from the principles of sound inductive reasoning; but solely in obedience to an artificial and technical rule, which, however it may be founded in wisdom and be promotive of good in general, yet, like all other rules, is capable of producing evil when

41

made to operate beyond the objects of its creation. It was to prevent the mischiefs ensuing from a misapplied rigour that statutes of jeofails have been enacted, and their salutary influence is invoked whenever the intrinsic merits of parties litigant would, without that influence, be sacrificed to mere modes and forms of practice. By the thirty-second section of the act to establish the judicial Courts of the United States, it is provided, "That no summons, writ, return, process, judgment, or other proceedings in civil causes in any of the Courts of the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said Courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear to them, without regarding any imperfections, defects, or want of form in such writ, declaration, or other pleading, return, process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially set down and express together with his demurrer as the cause thereof." It is true that a verdict, eo nomine, is not comprised within this provision of the statute, but judgments are: and the language of the provision, "writ, declaration, judgment, or other proceedings in civil causes," and further, "such writ, declaration, pleading, process, judgment, or other proceeding whatsoever," is sufficiently comprehensive to embrace every conceivable step to be taken in a cause, from the emanation of the writ down to the judgment. The Court have shown that the proceedings in this cause were according to the right of the case, that they brought into view the real merits of the parties litigant before the jury; they therefore consider both the verdict and judgment are within the terms and intent of the statute, and ought to be protected thereby.

The first bill of exceptions states, that the plaintiff having introduced his proofs, the defendant then gave evidence that in the spring of 1831 the plaintiff stated to the witness that he had just settled with Philip Roach, (the defendant's intestate,) all his private accounts, as well as an account of one Davidson against said Roach, and had been paid the same except five hundred dollars, for which he had Roach's due-bill or note, payable on demand, but the witness was uncertain whether the plaintiff said it was a due-bill or note: and further stated that he and Roach were going to

Washington where Roach had provided to pay said due-bill or note. And the defendant further proved, that about the time of this statement by plaintiff, Roach drew out of a partnership a considerable sum of money for his own use; whereupon the defendant moved the Court to instruct the jury, "That if they believed the account in suit was settled by a due-bill or note given by defendant's intestate to the plaintiff, then the presumption is that the said due-bill or note had been paid;" and afterwards further prayed the Court to instruct the jury, "That if the jury believe from the evidence, that the defendant's intestate, in the spring of 1831, closed the account in suit, by giving to the plaintiff his due-bill or note payable on demand, and that immediately afterwards the plaintiff with Philip Roach came to Washington for the purpose of receiving the money for the said due-bill or note; that about the time of said visit to Washington, a considerable sum of money was withdrawn by said Roach, from a partnership in which said Roach was engaged with Patrick Donelly, in consequence of which Donelly abandoned the partnership; then the jury may presume from the above facts, and from the non-production of the due-bill or note by the plaintiff, no account being given by the plaintiff of said bill or note, that the same was paid and delivered to the said Philip Roach, and by him destroyed;" but the Court refused, &c.

In trials at law, whilst it is invariably true that the decision of questions upon the weight of the evidence belongs exclusively to the jury, it is equally true, that wherever instructions upon evidence are asked from the Court to the jury, it is the right and duty of the former to judge of the relevancy and, by necessary implication, to some extent, upon the certainty or definiteness of the evidence proposed. Irrelevant, impertinent, or immaterial statements, a Court cannot be called upon to admit as the groundwork of instructions; it is bound to take care that the evidence on which it shall be called to act, is legal; and that it conduces to the issue on behalf either of the plaintiff or of the defendant. To apply these principles to the case under review.—The purpose of the defendant below was to show, that the demand of the plaintiff, if originally well founded, had been paid by the execution of a note by the testator of the defendant, which note had been subsequently satisfied, surrendered to the maker, and by him destroyed.

SUPREME COURT.

And what was the evidence introduced to establish these conclusions? The statement by a witness of a conversation between himself and the plaintiff in 1831, wherein it was stated, amongst other things, by the former, that he had settled all his private accounts, as well as on account of one Davidson, against said Roach, and had been paid the same, except five hundred dollars, for which he had Roach's due-bill or note payable on demand, but the witness was uncertain whether the plaintiff said it was a due-bill or note ; and further said that he and Roach were going to Washington, where Roach had promised to pay said due-bill or note : and further, that about this time Roach drew out of a partnership a considerable sum of money for his own uses.

Now, the first thing which strikes the attention with respect to the testimony of the witness is, that he does not prove with certainty, if at all, the existence of any instrument whatsoever: he saw none, and cannot give a clear and certain description of it as reported to him by the plaintiff: he does not know whether it was a due-bill or a note. In the next place, the witness does not disclose whether this note or due-bill, or whatever it may have been, was given for the benefit of Davidson, or for that of the plaintiff; for we are told that the plaintiff professed to have settled with Roach his own private accounts, as well as on account of one Davidson. Now, although there was a contract between Roach and one Davidson, for the building of the outlet lock, yet there is nothing in the plaintiff's contract with Roach, nor any proof in the record, which connects the plaintiff, or his undertaking, or the obligations of Roach to him, with any transaction between Davidson and Roach. Then, when the plaintiff is represented as speaking of a settlement with Roach on account of Davidson, distinguishing it at the same time from a settlement of his own private account, and as speaking of a note or due-bill taken upon these settlements, it would be as regular to presume that such note or due-bill, (if it were practicable to conjecture which it was,) belonged as much to the one settlement as the other. Upon these loose statements the Court were asked to instruct the jury, that if they believed the account in suit was settled by a due-bill or note given by the defendant's intestate to the plaintiff, then the presumption is, that the said due-bill or note has been paid. And further, that if they believed from the

same evidence, tnat the defendant's intestate, in 1831, closed the account in suit, by giving to the plaintiff his due-bill or note, payable on demand, and that immediately afterwards, the plaintiff with Philip Roach came to Washington for the purpose of receiving from Philip Roach the money for said due-bill or note; and that money was drawn by said Roach from a partnership in which he was engaged; then the jury may presume from the above facts, and the non-production of the due-bill or note by the plaintiff, (no account being given by the plaintiff of the said due-bill or note,) that the same was paid, and delivered to the said Philip Roach, and by him destroyed, &c. The propositions which the Court were here required to affirm, so far from following as regular or allowable inferences from the evidence, appear to be in nowise dependent upon it. No witness had proved so much as the existence of any particular writing whatsoever; much less that of an obligation payable to the plaintiff, and in his own interest and behalf. How, then, could the jury, with any propriety, be directed to presume, not only the existence of such an obligation, but also its discharge; and, in addition to these facts, its actual surrender to, and destruction by the defendant's intestate; thereby relieving him from all the presumptions naturally arising against a party from the non-production of a document, whenever the custody thereof is brought home to him, either by direct or circumstantial proofs. Almost any other propositions which can be imagined could with as much regularity have been required from the Court as instructions to the jury, as those which the Court was requested to affirm.

The cases of Swift v. Stevens from 8 Pick. 431; and of Freeman and Another v. Boynton, from 7 Mass. Rep. 483, have been relied on in argument for the plaintiff in error. Any influence of these cases in favour of the plaintiff, the Court is unable to perceive. The former was an action upon a lost promissory note; the latter was also an action upon a note, in which the question of diligence was chiefly involved. In these cases the only points ruled which seem to have any affinity with this case, were that in the first, the existence at one period and the subsequent loss or destruction of the note was required to be clearly shown; and in the second it was decided that, as a general rule, the demand for payment of a note must be accompanied with the possession

of the note. Accordingly, in the case from 8 Pick., the existence and subsequent loss of the note were established by a disinterested depositary with whom it had been lodged. These cases were ruled, and most properly so, upon the principle that a debtor, when he makes payment, shall receive the best allowable protection against a repetition of the same demand upon him, viz. : his bond or his note when either has been given. The cases of Clark v. Young and Company, 1 Cranch, 181 ; of Harris v. Johnson, 3 Cranch, 311 ; and of Morgan v. Reintzel, 7 Cranch, 273, all turn upon the same principle. In the plaintiff's first bill of exceptions the evidence tendered is vague and confused ; it establishes nothing pertinent to the point raised, and does not warrant, as a legitimate conclusion from it, the instruction asked for. The Court, therefore, properly denied that instruction.

In the second bill of exceptions the Court is asked to instruct the jury that, should they be of opinion, from the said evidence, that Philip Roach made and delivered his negotiable note payable on demand to the plaintiff for the balance due him on a final settlement of all accounts, that the plaintiff cannot recover, unless he has produced the said note, or proved that the same was lost, or that the same was cancelled, &c. This bill of exceptions may be disposed of in very few words. The instruction it prays for purports to be founded upon the evidence contained in the former bill ; and it asks, that if the jury shall believe, upon the evidence, that Philip Roach did execute and deliver to the plaintiff his negotiable note payable on demand, then, &c. Now, in the evidence referred to, there is not one word contained relative to a negotiable note made and delivered by Philip Roach to the plaintiff, or to any other person. It would have been improper for the jury to have embraced in their contemplation or belief any thing concerning a negotiable note ; and improper for the Court to have given them any instruction concerning a document which was not in the cause, and about which not a tittle of evidence was adduced from any quarter. In refusing the instructions asked for, as set forth in this second bill, the Circuit Court have also decided correctly ; and this Court, approving its decision upon both the points adjudged by it, doth affirm the judgment of the Circuit Court.