**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and Robert G. Litolff, Appellants,**

v.

**William HAYDEN, Appellee.**

No. 14239.

United States Court of Appeals Ninth Circuit.

March 16, 1956.

---

Samuel B. Stewart, Christopher M. Jenks, Arthur V. Toupin, George Chadwick, Jr., San Francisco, Cal., for appellants.

Stanley J. Gale, Sacramento, Cal., for appellee.

Before HEALY and POPE, Circuit Judges, and LINDBERG, District Judge.

LINDBERG, District Judge.

This is an action brought in federal court on the grounds of diverse citizenship, appellant bank having its principal place of business in San Francisco, California; appellant Litolff being an officer

at the Placerville, California branch of the bank; and appellee being a resident of the State of Utah at the time of filing his complaint and a resident of Oregon at the time of trial. Appellee, William Hayden, as plaintiff filed suit against the Bank of America National Trust and Savings Association (hereinafter referred to as Bank) and Robert G. Litolff as defendants. The complaint set forth three causes of action involving the same transaction. The first cause of action alleging a breach of an express contract, states, in substance, that on July 31, 1951 at Placerville, California, plaintiff purchased from defendants certain negotiable trade acceptances issued by the Stockton Box Company and then held by Bank, valued at $14,287.63 for the sum of $14,-287.63, and paid therefor, and that Bank failed to deliver said trade acceptances or return the sum paid after demand. The second and third causes of action are common counts and allege that at the same time and place defendants, first, became indebted to plaintiff in the sum of $14,287.63 for money had and received by defendants, and second, defendants received from plaintiff the sum of $14,287.-63 to and for the use of plaintiff and that although plaintiff had demanded payment from defendants no part of said sum had been paid. Plaintiff's prayer for judgment is for the one sum of $14,-287.63 and interest at the rate of 7% from July 31, 1951.

Defendants in their original answer to the complaint denied each and all of the foregoing allegations of plaintiff's complaint and by way of an amendment to their answer and for a further and separate defense to the complaint and to each cause of action allege that on or about July 31, 1951 plaintiff individually and for and on behalf of Hayden-Friedman Company, a partnership, arranged to loan money to Booker Brothers, a partnership, for the purpose of enabling them to terminate business relations then existent between Booker Brothers and Stockton Box Company, a corporation, and of enabling Booker Brothers to satisfy certain of their obligations to defendant Bank and Stockton Box Company; that these obligations were represented by promissory notes in the principal amount of $23,578.88 issued by Booker Brothers and then held by Stockton Box Company and also by trade acceptances of Stockton Box Company in the amount of $14,287.63 which had been discounted by Booker Brothers with the Placerville Branch of defendant Bank; that as a part of the arrangement plaintiff individually and on behalf of Hayden-Friedman Company, loaned Booker Brothers $15,000 and at the request of Booker Brothers issued and delivered to Bank two checks, one in the amount of $6,000 drawn by Hayden-Friedman Company, and one in the amount of $8,287.63 drawn by Hayden, both of which were payable to Bank and delivered by Hayden and Booker Brothers to Bank in satisfaction of the obligations represented by the aforesaid trade acceptances; that the aforesaid promissory notes were cancelled and returned to Booker Brothers; that Bank was instructed to and did deliver the trade acceptances to Stockton Box Company; that as a part of and in consideration of said loan to Booker Brothers Hayden received a chattel mortgage on a sawmill and other personal property of Booker Brothers and that all obligations of Booker Brothers to Hayden were satisfied in the fall of 1951 by the payment of cash and the delivery of lumber and other chattels.

After trial a general verdict for plaintiff and against the defendants in the sum of $14,119.43 was returned by the jury upon which judgment was entered.

Bank and Litolff appeal, contending that the trial court erred as follows:

1. In denying appellants' motions for a directed verdict at the close of appellee's case and at the close of all evidence and in denying their motion for judgment notwithstanding the verdict.

2. In denying appellants' motion for new trial on the ground that the verdict is contrary to the court's instructions to the jury.

3. In refusing to give to the jury certain instructions requested by appellants referred to in the record as "Defendants' Instruction No. 5" and "Defendants' Instruction No. 7."

4. In denying appellants' pretrial motion to inspect the books and records of the Hayden-Friedman Company, a copartnership, and in the same connection denying appellants' motion for a new trial on the ground that the verdict will result in a miscarriage of justice.

Because of such alleged errors appellants ask this court to reverse the judgment entered below and direct the district court to enter judgment in favor of appellants or in the alternative to grant a new trial.

Before proceeding to a consideration of appellants' assignments of error it will be necessary to narrate at some length the evidence relating to the transaction of July 31, 1951 which is the subject of the lawsuit between the parties as well as that having to do with contemporary dealings between Booker Brothers and appellee, William Hayden.

There is in the record evidence which tends to establish the following: Loren and John Booker, doing business as Booker Brothers, were operating a sawmill at Shingle Springs near Placerville, California. They were in straightened circumstances, not having enough capital to purchase logs and convert them into lumber. In 1950 they arranged financing through the Stockton Box Company of Stockton, California (hereinafter referred to as Stockton Box). Funds were advanced against lumber production through the issuance of trade acceptances drawn by Booker Brothers on Stockton Box, accepted by Stockton Box and discounted by the Bank, who conveyed the proceeds to Booker Brothers. This arrangement continued into 1951. Under an agreement dated March 31, 1951 between Booker Brothers and Stockton Box the latter agreed to advance $25 per thousand board feet on logs decked at the sawmill. Each loan was to be evidenced by a promissory note payable to the company and secured by a chattel mortgage on all logs decked or to be decked at the sawmill. In consideration of the loans Booker Brothers agreed to sell all lumber produced by them during 1951 to Stockton Box at prices to be agreed upon thereafter. On July 31, 1951, the date of the transaction between Bank and appellee, Bank held trade acceptances of Stockton Box of the face value of approximately $15,000 which had been discounted by Bank and funds advanced thereon to Booker Brothers. The trade acceptances held by Bank were presentable to Stockton Box for payment as they severally fell due.

During July, 1951, being dissatisfied with the price Stockton Box was willing to pay for lumber Loren Booker, who handled sales and finances for the sawmill, carried on negotiations with William Hayden, the appellee, looking toward an arrangement whereby Booker Brothers would no longer have to sell their lumber to Stockton Box but would be able to sell elsewhere at a higher price. The arrangements proposed and the details of the transactions between Hayden and Loren Booker, between Hayden and Bank, and between Loren Booker and Bank, to get Stockton Box out of the picture were matters upon which the evidence was in conflict.

Under Hayden's version of the transaction he was to purchase the trade acceptances from Bank, see that they were not presented to Stockton Box, thereby permitting Booker Brothers to sell lumber elsewhere. Accordingly he called at the Bank with Loren Booker on July 31, 1951, advised Bank of his desire to purchase the trade acceptances, left the bank with Hayden to meet with a lawyer to arrange an agreement covering his transaction with Booker Brothers (the substance of which we will refer to later), returned to Bank, signed two checks filled out by an officer of Bank (being Litolff, one of appellants), and was advised that the trade acceptances would be sent to him in Salt Lake, Utah after the checks had cleared.

It is undisputed that the checks were accepted by Bank and paid but the trade acceptances were never delivered to Hayden, Loren Booker having advised Bank by letter dated August 1, without disclosure to appellee Hayden, that the trade acceptances should be delivered to Stockton Box. Hayden testified that during the first week of September, 1951 he called at the bank to inquire why he had not received the trade acceptances and was told by some unidentified person there that through error they were sent to Stockton Box. After indicating his concern he was told the matter would be looked into and he should call back later. Hayden next called at the Bank during the latter part of October in the company of Jordan Friedman, one of the partners of Hayden-Friedman, to inquire as to the whereabouts of the trade acceptances and why they had not been mailed to Salt Lake. On this occasion and on a return call the following day Friedman carried on most of the conversation with the bank officials. Hayden testified that during these conversations the bank officials, including the manager, Mr. Elledge, admitted that Hayden had purchased the trade acceptances but that Bank had through error mailed them to Stockton Box and the matter would have to be taken up with the legal department of Bank. He further testified that a demand was made on Bank at that time for return of the money paid.

Departing now from the transaction between Bank and Hayden we will consider the negotiations between Hayden and Booker Brothers. On July 31, 1951 when Hayden and Loren Booker left the bank after their first call they went to a lawyer's office and there entered into an agreement described as "Agreement and Chattel Mortgage" (Exhibit C) whereby Hayden agreed to loan Booker Brothers $15,000 for the express purpose of assisting them in the financial operation of their planing mill and general lumber business, to be secured by a chattel mortgage on certain personal property at the sawmill as well as logs there situated and any to be added thereafter, all of which logs were to be subject to the contract.

The loan of $15,000 was to be repaid within seventy-five days by payments of $32 per thousand board feet for all lumber manufactured and sold by Booker Brothers. In addition Hayden was to receive a profit of 3½% of the net sale price for all lumber manufactured and sold from the sawmill. Only the payments for lumber sold were to be credited on the loan and the 3½% on sales to January 1, 1952 was to be profit to Hayden.

The agreement recites that Hayden recognized that certain other personal property described therein was already subject to chattel mortgage and that a second chattel mortgage thereon could not be given but that in event of default Hayden, if he so elected, could pay off any prior chattel mortgage and the personal property covered would become subject to the agreement and deemed additional security.

It appeared from the evidence at the trial that the logs covered by the "Agreement and Chattel Mortgage" were already under chattel mortgage to Stockton Box but recognition of this fact is not set forth in the agreement. Further, neither Stockton Box nor the trade acceptances are referred to therein.

On September 13, 1951 after Hayden had learned from Bank that the trade acceptances had been sent to Stockton Box he entered into a supplemental agreement with Booker Brothers amending the agreement of July 31, 1951 as follows:

"That all the monies due and owing under said agreement and any additional advances made pursuant thereto shall be immediately due and payable within thirty (30) days after the receipt by the said Booker Brothers from the said Hayden of written notice for the payment of said money."

and also providing that the original "Agreement and Chattel Mortgage" cov-

er certain additional equipment at Booker Brothers' sawmill. The supplemental agreement recited that it was understood and agreed that such equipment was then subject to a chattel mortgage to Stockton Box but that when said chattel mortgage was cleared the property would become subject to both the original and supplemental agreements of the parties.

Much of the evidence adduced at the trial bore on sales of lumber and equipment, payments made therefor to Hayden and Booker Brothers and other transactions all related or subject to the aforesaid original and supplemental agreements. An analysis of this evidence is unnecessary here other than to state that it was established by two exhibits (Nos. 15 [1] and 16 [2]) admitted upon

### 1. Plaintiff's Exhibit No. 15

#### Money Received

| | | |
|---|---:|---|
| Aug. 13—Sutter fort | $ 1,558.41 | Sales of Lumber |
| Aug. 15—Booker Bros. | 38.77 | 3½% Com. |
| Oct. 3—Sutter fort | 2,227.25 | Sale of Lumber |
| Oct. 11—Sutter fort | 1,319.38 | Sale of Lumber |
| Oct. 19—Sutter fort | 540.20 | Sale of Lumber |
| Nov. 10—Booker Bros. endorsed check H & F Co. | 7,000.00 | Sale of Equipment |
| Nov. 16—Alpine Lumber | 496.74 | Sale of Lumber |
| May 19, 1952—Placerville Lumber | 934.93 | Sale of Lumber |
| Received from suit of Wholesale Lumber Co. including interest and cost | 5,462.81 | |
| | 19,578.49 | |

Should of received 3½% of all lumber cut in yard.

### 2. Plaintiff's Exhibit No. 16

#### Money Payments

| | | |
|---|---:|---|
| July 31—Bank of America T & C | $ 6,000.00 | Pur of Trade |
| July 31—Bank of Am. Cont Bank | 8,287.63 | Acceptance |
| Aug. 5—Booker Bros. Cont Bank | 712.33 | Advance |
| Aug. 13—Booker Bros. T & C | 653.91 | Advance |
| Aug. 15—Booker Bros. T & C | 900.00 | Advance |
| Sept. 1—Loren D. Booker T & C | 50.00 | Loan |
| Sept. 7—Art Johnson T & C | 50.00 | Commission |
| Sept. 12—Reeders Welding T & C | 161.00 | Power Saw |
| Sept. 17—Huggins Truck Repair Cont B | 100.00 | Repairs |
| Sept. 18—Booker Bros. Cont B | 1,500.00 | Advance |
| Sept. 28—Bank of Am. Cont B | 1,000.00 | Release Attach |
| Oct. 3—Booker Bros. T & C | 1,215.28 | Advance |
| Oct. 11—Booker Bros. T & C | 1,133.06 | Advance |
| Oct. 11—Booker Bros. T & C | 673.05 | Advance |
| Oct. 18—Booker Bros. T & C | 373.55 | Advance |
| Nov. 13—Hudgins Repair Cont B | 295.67 | Repair |
| | 23,105.48 | |
| Aug.—Booker Bros. | 5,000.00 | Ad. on Truck |
| Rental on Fork lift—100 per week Nov. 8 to Jan. 5 | 800.00 | 2 Months Rent |
| Repairs on Equipt. rented as agreed Moore Equipt. Co. | 1,045.26 | |
| Western Sal. & Supply | 217.60 | Repairs |
| Recovery cost of Wholesale Lumber suit | 1,223.58 | |
| Nov. 11—Insufficient check | 100.00 | Book Bros. |
| Hauling of lumber est. Shaw | 600.00 | |
| | 32,091.92 | Total |

stipulation at the time of trial that the total sum of $32,091.92 had been paid by Hayden under said agreements and he had received on account thereof $19,578.49. Of the sum of $32,091.92, $14,287.63 was paid Bank for the trade acceptances on July 31, 1951; $712.33 paid Booker Brothers on August 5, 1951 and five other payments aggregating $1,814.91 were made prior to the execution of the supplemental agreement on September 13, 1951. Of the total sum of $19,578.49 received by Hayden there was received prior to September 13, 1951, $1,558.41 as a result of sale of lumber and $38.77, being an item of 3½% commission. This item of $38.77 was not to be credited on the $15,000 payment under the original agreement. It is established under said exhibit therefore that after the execution of the supplemental agreement $14,177.02 was paid by Hayden on account of Booker Brothers and $17,981.31 was received.

With the foregoing facts in mind we may now consider appellants' first assignment of error, namely, did the trial court err in denying defendants' motion for a directed verdict and for judgment notwithstanding the verdict because, as a matter of law, appellee suffered no damage?

At the close of plaintiff's (appellee's) case and again after all the evidence was in defendants (appellants) moved for a directed verdict. Appellants state in their brief that "These motions were made on the ground that payments received by Hayden from Booker Brothers, as a matter of law, must be applied to extinguish the *$15,000 loan involved in this action,* and that therefore Hayden has not been damaged." We pose the question of whether, with this case in its present posture there is any longer a "$15,000 loan involved in this action."

As we set forth at the opening of this opinion appellee brought suit against appellants, alleging, in addition to a claim under an express contract, a second and third cause of action for money had and received.

■ Assumpsit for money had and received also lies to recover back money paid on a contract, the consideration of which has failed. 4 Am.Jur., Assumpsit, § 27, p. 517; Cherry v. Hayden, 100 Cal. App.2d 416, 223 P.2d 878; Ballagh v. Williams, 50 Cal.App.2d 10, 122 P.2d 343; Bennett v. Superior Court, 218 Cal. 153, 21 P.2d 946; Detwiler v. Clune, 77 Cal. App. 562, 247 P. 264; Vincenzo v. Richwood Banking & Trust Co., 93 W.Va. 368, 117 S.E. 882, 27 A.L.R. 1475. This rule follows the broad legal proposition that money paid on a contract, the consideration for which has wholly failed, may be recovered back under the common count for money had and received.

Therefore, in the event of a failure of consideration Hayden's right of action was not limited to damages resulting from a breach of an express contract but recovery was permissible under plaintiff's theory on the common counts for money had and received.

The trial court properly submitted this theory of liability and damage to the jury with the following instruction:

"An action for money had and received is based upon an implied promise to restore money which the defendant in equity and good conscience should not retain and which was paid by plaintiff to defendant and which in equity and good conscience should be returned by defendant to plaintiff.

"The burden of proving such is upon the plaintiff.

"The law implies a promise to return or refund money paid upon a consideration which has entirely failed. * * *

"Herein, the plaintiff, William Hayden, claims that he paid the defendant, Bank of America, the sum of $14,268.63 [3] in payment of certain trade acceptances which he claims

---

3. Counsel for appellee directs attention in his brief to the fact that the figure of $14,268.63 in the above instruction appears to be a reporter's or printer's error.

the Bank promised and agreed to sell and deliver to him.

"If you find that the Bank did make such agreement, as claimed by plaintiff, and that William Hayden paid the Bank and the Bank accepted said sum, based upon their promise to sell and deliver the trade acceptances; and if you further find that the Bank failed to sell and deliver said trade acceptances, and despite such failure to sell and deliver, retained the money paid to them by William Hayden, you are instructed that there has been a failure of consideration and, in such event, plaintiff William Hayden is entitled to have his money returned to him by the Bank."

No exception was taken to the foregoing instruction by appellants.

The court also instructed the jury on the measure of damage to be applied under appellants' theory that Hayden did not "purchase" in the usual sense, but at most was to receive and hold the trade acceptances as additional security for the original $15,000 loan which appellants contend was paid. The instruction was as follows:

"If you should find that the defendants agreed to sell and deliver the trade acceptances to the plaintiff, this does not necessarily mean that your verdict should be for the plaintiff. Your verdict still should be for the defendants unless you also find that the plaintiff suffered damage by not receiving the trade acceptances.

"You will remember that the $14,-287.63 was part of a loan of $15,-000.00 which the plaintiff made to Booker Brothers. If this loan has been paid the plaintiff has suffered no damage and your verdict shall be for the defendants.

"In determining if the $15,000.00 loan has been paid, you should consider all payments, including such credits as agreed between the plaintiff and Booker Brothers should be allowed for lumber which Booker Brothers shipped to the plaintiff or others at plaintiff's request or for his benefit.

"Even if you find in plaintiff's favor your verdict must not exceed the amount, if any, which Booker Brothers still owe on the $15,000.00 loan."

Appellants' argument appears to be bottomed on the erroneous assumption that there could be no theory on which the jury could award damages other than that presented under their contention that the purchase of the trade acceptances (which purchase appellants admit they are precluded from denying under the jury's verdict) was in execution of the loan agreement between Hayden and Booker Brothers.

■■ While appellants in support of their affirmative defense as well as their theory of damage produced what might appear to this court as trier of the facts persuasive evidence that the transaction was as Bank contended, and even though Hayden admitted on cross examination that he desired the trade acceptances for security for the loan which appellants contend is involved in this action, there was a conflict in the evidence not only as to the nature of the transaction but likewise as to the theory and the amount of damage suffered, if any. These matters in dispute were all issues for the jury to resolve. The jury found for appellee in a general verdict in the sum of $14,119.-43. No separate verdict as to each cause of action, no interrogatories or special verdict were requested or submitted to the jury. Consequently the verdict is to be construed as responsive to any and all material issues in the case, including the alternative theory of damages. 53 Am. Jur., Trial, § 1043; 89 C.J.S., Trial, § 502, p. 171; Roach v. Hulings, 16 Pet. 319, 41 U.S. 319, 10 L.Ed. 979; Erie R. Co. v. Schleenbaker, 6 Cir., 257 F. 667; Dickins v. International Brotherhood, etc., 84 U.S.App.D.C. 51, 171 F.2d 21; Cooper v. Chicago & N. W. Ry. Co., 145 N.W. 203, 155 Wis. 614; Rowland v. Elkin, 85 Ga.App. 301, 69 S.E.2d 388.

■ Since the jury has returned a general verdict in favor of appellee, this

court in considering the question of the sufficiency of the evidence to sustain the verdict, must take that view of the evidence which is most favorable to the prevailing party, accepting as established all facts which the evidence reasonably tended to prove and giving to the prevailing party the benefit of all inferences which may be reasonably drawn from the evidence. Oxnard Canners, Inc., v. Bradley, 9 Cir., 194 F.2d 655; Ross v. British Yukon Nav. Co., 9 Cir., 188 F.2d 779.

Concluding, as we must, under the law and evidence as already set forth, that appellee had a cause of action under the common counts for money had and received which was properly submitted to the jury under sufficient instructions as to the law to which no exception was taken, the general verdict of the jury may be sustained as based solely on a finding on said counts or causes of action and appellee's theory of damages applicable thereto.

Such being our conclusion, it is unnecessary for us to consider further the alleged error urged by appellants in their first assignment of error.

Under their second assignment of error appellants contend that the trial court should have granted appellants' motion for new trial because the verdict of the jury is contrary to the instructions of the court. The particular instruction referred to appears in the last two paragraphs of the last-quoted instruction, which we again set forth:

"In determining if the $15,000.00 loan has been paid, you should consider all payments, including such credits as agreed between the plaintiff and Booker Brothers should be allowed for lumber which Booker Brothers shipped to the plaintiff or others at plaintiff's request or for his benefit.

"Even if you find in plaintiff's favor your verdict must not exceed the amount, if any, which Booker Brothers still owe on the $15,000.00 loan."

■ The alleged error here involved is subject to the same infirmity pointed out with respect to appellants' first assignment of error. The instruction, while not expressly limited by the trial judge, by implication is clearly restricted to appellants' theory of damages and unrelated to an award founded on failure of consideration. It therefore has no application if the verdict is to be sustained solely on the theory of the common counts for money had and received as we have just concluded it may be. For this reason appellants' complaint that the verdict is contrary to the court's instructions is without merit. While the alleged error may thus be disposed of further comment should be made with respect to the last paragraph of the instruction. Appellants under their first assignment of error point out the precise amount of the verdict, being $14,119.43, and then calculate the method and figures presumably used by the jury under the evidence as to the money paid and received under the loan agreement between Hayden and Booker Brothers to reach said figure. This argument is advanced in support of appellants' premise, assumed throughout, that the jury awarded damages based on the amount owed and unpaid under the loan agreement. While we have already stated why this premise cannot now be accepted, it should be observed that the concluding paragraph of the instruction last set out may well explain the amount of the verdict being $14,119.43 instead of a larger sum representing the amount paid Bank, together with interest. It is possible the jury construed the instruction, "Even if you find in plaintiff's favor your verdict must not exceed the amount, if any, which Booker Brothers still owe on the $15,000.00 loan." as applicable to a recovery under the common counts in the event of failure of consideration as outlined in the earlier instructions of the court. About this appellee but not appellants may complain.

What has been said as to appellants' first and second assignments of error we believe also answers appellants' conten-

tion of error by the trial court in failing to give appellants' proposed instructions numbered 5 and 7 as requested. There is no need to set forth or discuss the substance of said instructions and claimed error related thereto other than to state that here again any possible error, which we do not concede, would be material only if the jury's verdict must be construed as based on appellants' theory of damage. Such is not the case.

It should be stated that had there been a verdict returned as to each cause of action separately or had interrogatories been submitted and returned along with the general verdict the result might have been such as to permit further consideration of appellants' assignments of error. However, the record does not disclose appellants' request as to either.

In their last assignment of error appellants contend the trial court erred in denying their motion to inspect the books of the Hayden-Friedman Company made under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A. It is also contended in connection with and as a part of this assignment of error that, using the language appearing in appellants' brief, "the trial court erred in denying defendants' motion for a new trial on the grounds that the verdict will result in a miscarriage of justice and the verdict appears to be based on evidence which is false, both for the following reasons: The uncontradicted evidence of a State Court action showed that the said partnership was composed of plaintiff and two others and had been involved as a principal in the transaction which forms the basis for this action."

Appellants cite no authority to support their contention of error with respect to the denial of their discovery motion by the trial court. Neither do they assert nor does the record disclose that the denial of the motion was one of the grounds upon which appellants based their motion for new trial before the trial court. After setting forth certain facts relating to their pretrial motion and outlining evidence adduced at the trial as to appellee's alleged connection with the partnership which appellants contend establish that the verdict results in a miscarriage of justice they state in their brief, page 49:

"We are well aware of the fact that an appellate court does not normally disturb a ruling on motion for new trial but we think it should do so when the denial of the motion has adversely affected substantial rights of one of the parties. See Southern Pacific Co. v. Guthrie, 186 F.2d 926, (C.A.9th, 1951), which discusses at length a motion for a new trial on the ground of an excessive verdict."

It is not clear to us in what manner appellants rely on the cited decision. Coupling, as they do, their contention of error as to the pretrial motion with their contention of error in denying the motion for new trial, we conceive that it could be appellants' theory that inasmuch as one of the grounds for their motion for new trial involved an alleged error of law, namely, the denial of a pretrial motion, this court's review of the trial court's denial of their motion for new trial is not as circumscribed as it might otherwise be. However, as already indicated the record does not substantiate such a theory. In any event it appears that the foundation of appellants' fourth assignment of error is the trial court's denial of their pretrial discovery motion. The record before us as to this motion shows that on May 15, 1953, about two weeks before trial, the court below after a hearing on appellants' motion ordered appellee to produce for inspection certain books, records and documents as demanded but such order did not include all the books and records of Hayden-Friedman Company as sought by appellants. The motion was based upon an affidavit of appellants' counsel, Christopher M. Jenks, setting forth certain facts and information, ascertained through the taking of appellee's deposition and otherwise, having to do with various transactions allegedly relevant to the subject matter of the lawsuit. It was stated therein that the books, rec-

ords and other documents covered by the motion were in the possession or control of appellee individually or as one of the co-partners of Hayden-Friedman Company.

A controverting affidavit by appellee, William Hayden, stated, among other matters, that Hayden-Friedman Company was a copartnership made up of Ben Hayden and Jordan Friedman, having its principal place of business in Salt Lake City, Utah; that appellee was associated with said partnership in a joint venture having to do with the purchase and sale of quonset huts, that this association was the only activity he had engaged in with said partnership; that he was not and had not become a general partner; that in the course of the joint venture a checking account was opened in a Sacramento Branch of the Bank of America in the name of the partnership; that appellee was authorized to draw checks thereon and that the quonset hut joint venture had been completed and the profits apportioned between appellee and Hayden-Friedman Company; that the partnership had no interest in the transaction involved in the lawsuit; that appellee was not familiar with the books, records and affairs of the partnership and he did not have in his possession and could not produce any of the books, records, ledgers or accounts or any other matters belonging or pertaining to Hayden-Friedman Company. Apart from these affidavits no further showing was made prior to trial.

At the time of trial evidence was adduced as to the relationship or interest of Hayden-Friedman Company in the transactions between appellee, Bank and Booker Brothers. In view of our conclusion we think it unnecessary to fully detail this evidence. Briefly, however, it was shown without dispute that one of the checks given by appellee to Bank for the trade acceptances herein involved was drawn on the Hayden-Friedman Company account and signed by appellee, William Hayden. The reasons for giving a check drawn on this account as well as the relationship between appellee and the partnership, the participation of appellee and Friedman allegedly as members of the partnership in connection with the various phases of the transaction, including the state court action referred to in appellants' assignment of error, and alleged inconsistencies and falsifications occurring all were brought out before the court and jury. William Hayden, whose testimony was corroborated by Jordan Friedman, testified that all of the funds involved in the purchase of the trade acceptances belonged to him and that the Hayden-Friedman Company had no interest therein. The testimony of the witnesses and other evidence, including certain affidavits used in the state court action instituted as a result of dealings under the Hayden-Booker Brothers loan agreement, were all before the jury and any bearing these matters might have had upon the issues involved must be considered as resolved by them.

It is clear that upon the showing made prior to trial the district court's order was not erroneous. In view of the affidavit of appellee denying possession or control of the books and records of the partnership the order of production was as broad as the showing permitted.

■ If appellants believed that the district court's action was improvidently taken or that the evidence at the time of trial disclosed facts that rendered such order a denial of substantial rights it was incumbent upon them to protect such rights at the time of trial.

■ Both William Hayden, the appellee, and Jordan Friedman were present and testified at the trial. Appellants, so far as the record discloses, did not subpoena or move for production of the partnership records at that time. Such rights were not foreclosed by the denial of appellants' pretrial motion under Rule 34. If they believed that the production and inspection of the books and records of the partnership were essential to protect their rights appellants should have renewed their request for such an inspection and given the trial court an opportunity to pass thereon in the light of the evidence as then developed. There

was no duty upon the trial court to initiate such a demand.

The denial of a motion under Rule 34 of the Federal Rules of Civil Procedure is in large measure discretionary with the trial judge and will not be disturbed on appeal unless the action was improvidently taken or affected the substantial rights of the parties. 2 Barron and Holtzoff, § 803; Sher v. De Haven, 91 U.S.App.D.C. 257, 199 F.2d 777, 36 A.L.R.2d 937; Carter v. Baltimore & O. R. Co., 80 U.S.App.D.C. 257, 152 F.2d 129.

Under the circumstances here presented we cannot find that the denial of appellants' pretrial motion was improvident or that it affected substantial rights of the appellants, nor do we believe that it constitutes a basis for this court to disturb the trial court's denial of appellants' motion for new trial upon the ground that the verdict was based upon evidence that was false and that the verdict will result in a miscarriage of justice.

Judgment affirmed.